RIVERWATCH... *on the James at Stony Point*

## REAL ESTATE PURCHASE AGREEMENT

This REAL ESTATE PURCHASE AGREEMENT (this "Agreement") is dated as of the _21st_ ~~day of August, 2006~~ September 21st day of August, 2006, by and between STONY POINT LAND, INC., a Virginia corporation, with a business address of 9030 Stony Point Parkway, Suite 500, Richmond, Virginia 23235 ("Seller"); and Thomas R. and Katherine P. Hubbard _____ with an address of 15624 SE 93rd Court, Newcastle, WA 98059 ("Purchaser"), and provides as follows:

FOR and in consideration of the mutual covenants hereinafter set forth, the parties agree as follows:

1.      <u>Sale and Purchase</u>. Seller agrees to sell and Purchaser agrees to purchase that certain parcel of land belonging, lying and being in the City of Richmond, Virginia (the "City"), identified as Lot 2 (the "Lot") on the plat of the Riverwatch subdivision (the "Subdivision") prepared by Balzer & Associates, Inc., a copy of which is attached hereto as <u>Exhibit A</u> as a part hereof (the "Subdivision Plat"), together with all easements appurtenant to the Lot. Purchaser acknowledges that the Subdivision Plat is subject to minor revisions in connection with the final approval thereof by the City of Richmond; provided, however no such revision shall materially affect the size or boundaries of the Lot or the general layout without the consent of Purchaser.

2.      <u>Purchase Price</u>. The purchase price for the Lot is Four Hundred Fifty Thousand Dollars ($450,000.00), and shall be paid by (i) application of the Deposit (as hereinafter defined) and (ii) wire transfer to Seller's account at settlement.

3.      <u>Deposit</u>. Purchaser has made a deposit with Seller of Forty-five Thousand Dollars ($45,000.00) (the "Deposit") by check, receipt of which is hereby acknowledged. If this transaction is not consummated, the Deposit shall be retained by Seller or refunded to Purchaser in accordance with this Agreement.

4.      <u>Title</u>.

        (a)    Seller agrees to convey the Lot to Purchaser by general warranty deed free and clear from all tenancies and liens (except for real estate taxes for the current year), but subject to (i) the Declaration (as hereinafter defined), (ii) all applicable ordinances and regulations of the City of Richmond and (iii) other easements, restrictions, covenants and conditions not adversely affecting the Lot for residential use which are currently of record or which are executed and recorded in connection with the development of the Subdivision.

        (b)    The Lot shall be conveyed subject to a declaration of covenants, conditions and restrictions in form and substance substantially similar to the form of Declaration of Covenants, Conditions and Restrictions for Riverwatch Property Owners Association, Inc., dated June 30, 2006 (the "Declaration") and, in accordance with the Declaration, the Property must comply with architectural and development standards in form and substance substantially similar to the draft document titled Riverwatch...on the James, Richmond, Virginia, Architectural Design Standards with an issue date of June 30, 2006 (the "Standards"), each of which have been provided to Purchaser. Purchaser acknowledges receipt of the Declaration and the Standards and agrees to comply with all of the terms and conditions thereof, as applicable.

5.      <u>Settlement</u>. Settlement shall be made at the offices of Purchaser's attorney or such other place as Purchaser and Seller may agree, not later than ten (10) days following receipt by Purchaser of notice from Seller that Seller has completed the Phase One Infrastructure (as hereinafter defined). At settlement, Seller will deliver to Purchaser a general warranty deed conveying title to the Lot to Purchaser, an affidavit regarding parties in possession and mechanics' and materialmens' liens to the order of and acceptable to Purchaser's title insurance company and an affidavit of non-foreign status executed by Seller. Seller shall pay for preparation of the deed and affidavits to be provided by Seller, the recording tax applicable to grantors and its attorneys' fees. All other settlement costs incurred by Purchaser and all other taxes and fees required for recordation of the deed shall be paid by Purchaser. Possession of the Lot shall be delivered to Purchaser upon settlement. At settlement, Seller shall have completed formation of the Riverwatch Homeowners' Association, as provided for in the Declaration and shall convey to such association common areas consisting of (i) approximately five and seven-tenths (5 7/10) acres located between the northern line of Cherokee Road and the James River (the "Riverfront Common Area") and (ii) those areas located south of Cherokee Road identified on the Subdivision Plat as common areas.

6.      <u>Inspection of Lot</u>. Purchaser represents that an inspection satisfactory to Purchaser has been made of the Lot and Purchaser agrees to accept the Lot in its present condition, subject to (i) Seller's completion of demolition and removal of such portion, if any, of the two (2) existing houses and swimming pool located within the Subdivision which affect the Lot which shall be performed prior to settlement and (ii) Seller's completion of the required infrastructure as provided in Paragraph 8 of this Agreement.

7.      <u>Prorations</u>. All real estate taxes and annual assessments levied pursuant to the Declaration shall be prorated as of the date of settlement.

8.     Infrastructure.  Seller agrees to construct infrastructure improvements for the Subdivision, which shall be constructed in two (2) phases. The "Phase One Infrastructure" shall consist of improvements necessary for issuance by the City of permits for the construction of a residential dwelling on lots within the Subdivision, including (i) a road providing access to the Lot from Cherokee Road and an emergency access road as required by the City, each as shown on the Subdivision Plat (collectively, the "Roads") exclusive of the top coat of asphalt; and (ii) the extension of gas, water, sanitary sewer, electric, telephone and cable utilities to the Lot. The "Phase Two Infrastructure" shall consist of improvements that can be constructed concurrent with construction of a dwelling on lots within the Subdivision, including (i) an entry feature at the entrance from Cherokee Road including columns, fencing and landscaping; and street trees on the entry road, all as shown conceptually on the preliminary landscape plan by Higgins & Gerstenmaier attached hereto as Exhibit B (the "Preliminary Landscape Plan"); (ii) improvements to the Riverfront Common Area consisting of (a) selective thinning and removal of trees as permitted by law, (b) four-board wooden or similar fencing along the Cherokee Road line of the Riverfront Common Area including a vehicular gate, and (c) a small parking area, all as shown conceptually on the Preliminary Landscape Plan; (iii) a pedestrian trail leading to the James River; (iv) all traffic control signage required by the City; (v) street identification signs; and (vi) the final coat of asphalt on the Roads. Seller shall commence construction of the Phase One Infrastructure as soon as practicable after issuance of the required permits by the City, which are expected to be available by September 30, 2006 and shall thereafter diligently pursue completion thereof.  As soon as practicable following settlement, Seller shall commence construction of the Phase Two Infrastructure and shall thereafter diligently pursue completion thereof. Subject to extensions for events beyond the reasonable control of Seller, the Phase Two Infrastructure shall be completed no later than the time the first home within the Subdivision has been completed, as evidenced by issuance of a certificate of occupancy by the City.

9.     Construction.
       (a)     Purchaser acknowledges that the purchase of the Lot is for the purpose of constructing a single-family residential dwelling thereon consistent with the terms of the Declaration, the Standards and all applicable ordinances, laws, codes and regulations, and agrees that such construction shall be performed in accordance with the requirements of same and of this Agreement.
       (b)     Purchaser shall not initiate any site preparation or construction activity on the Lot except in accordance with plans approved in accordance with the Declaration and the Standards.
       (c)     Purchaser acknowledges that it will be responsible for payment of all utility connection fees and all costs associated with the issuance of the building permit from the City.

10.    Survive Settlement.  The provision of paragraphs 8, 9 and 11 shall survive settlement and transfer of legal title to the Lot.

11.    Real Estate Brokerage.  Purchaser and Seller each represents and warrants to the other that this Agreement has resulted between the parties without the assistance of any agent, broker or finder being involved other than Joyner Fine Properties ("Listing Broker") and Cal Signature Realty ("Selling Broker"). Selling Broker if any is to be paid a fee of three percent (3 %) of the gross sales price by Seller. Listing Broker is to be paid the fee stated in the listing agreement executed by Seller and Listing Broker, less any amount due Selling Broker. Seller hereby authorizes and directs the settlement agent to disburse to the Listing Broker and the Selling Broker from Seller's proceeds the respective brokerage fees at settlement.  In the event there are fees or commissions payable to any other person or firm on account of the sale and purchase of the Lot, such fees or commissions shall be the full responsibility of the party whose actions resulted in such a claim for fees or commissions. Purchaser acknowledges that Seller has disclosed to Purchaser that certain officers of Seller are licensees of the Virginia Real Estate Board, but no brokerage commissions or compensation is due to any such officers.

12.    Statutory Notices.  The following notices are provided as required by the Code of Virginia.

       (a)     Property Owners' Association Disclosure.  Seller represents that the Lot Property is located within a development which is subject to the Virginia Property Owners' Association Act (Sections 55-508 et. seq. of the Code of Virginia) (the "Act"). If the Property is within such a development, the Act requires Seller to obtain from the property owners' association an association disclosure packet and provide it to Purchaser or to advise Purchaser that the packet is not available. The information contained in the association disclosure packet shall be current as of the specified date on the disclosure packet obtained by Seller. Purchaser may cancel this Agreement (a) within 3 days after the date of this Agreement, if on or before the date that Purchaser signs this Agreement, Purchaser receives the association disclosure packet or is notified that the association disclosure packet is not available; (b) within 3 days after receiving the association disclosure packet, if the association disclosure packet or notice that the association disclosure packet will not be available is hand delivered or delivered with the consent of Purchaser by electronic means and a receipt obtained; or (c) within 6 days after the postmark date if the association disclosure packet or notice that the association disclosure packet will not be available is sent to Purchaser by United States mail. Purchaser may also cancel this Agreement at any time prior to settlement if Purchaser has not been notified that the association disclosure packet will not be available and the association disclosure packet is not delivered to Purchaser. Notice of cancellation shall be hand-delivered or sent by United States mail, return receipt requested, to Seller (owner) or his agent. Such cancellation shall be without penalty, and Seller shall cause any deposit to be returned promptly to Purchaser, but not later than thirty days from the date of cancellation. The right to receive the association disclosure packet

and to cancel this Agreement terminates at settlement. If Purchaser has received the association disclosure packet, Purchaser has a right to request an update of such disclosure packet from the property owners' association. A request for an updated disclosure packet does not extend the cancellation periods set forth above. Purchaser may be required to pay a fee for all costs incurred in updating the association disclosure packet. Purchaser acknowledges that it has received the association disclosure packet prior to the date it signed this Agreement.

(b)     Mechanic's Lien Notification.  Virginia law (Va. Code Ann. § 43-1 *et seq.*) permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against the Lot. This lien may be filed at any time after the work is commenced or the material is furnished, but not later than the earlier of (i) 90 days from the last day of the month in which the lienor last performed work or furnished materials or (ii) 90 days from the time the construction, removal, repair or improvement is terminated.  AN EFFECTIVE LIEN FOR WORK PERFORMED PRIOR TO THE DATE OF SETTLEMENT MAY BE FILED AFTER SETTLEMENT.  LEGAL COUNSEL SHOULD BE CONSULTED.

13.     Entire Agreement; Amendments. This Agreement contains the entire agreement between Seller and Purchaser relating to the Lot and supersedes all prior contemporaneous negotiations, understanding and agreements, written or oral, between the parties.  This Agreement shall not be amended or modified and no waiver of any provision shall be effective unless set forth in a written instrument authorized and executed with the same formality as this Agreement.  This Agreement is binding upon and shall inure to the benefit of the parties hereto and their respective heirs, devisees, legal and personal representatives, assigns, and successors in interest; provided, however, Purchaser may not assign this Agreement or any of its rights or interest therein without the prior written consent of Seller.

14.     Miscellaneous.  The section headings and captions contained herein are for reference purposes only and shall not in any way affect the meaning and interpretation of the terms of this Agreement.  All questions with respect to the construction of this Agreement and the rights and liabilities of the parties hereto shall be determined in accordance with the applicable provisions of the laws of the Commonwealth of Virginia. This Agreement may be executed in any number of duplicate originals or counterparts, all of which shall constitute a single agreement. Any duplicate original on which the signatures of both parties shall appear shall be deemed an original of this Agreement. Any number of counterparts on which the signatures of both parties shall appear shall constitute a duplicate original. As used herein the singular shall include the plural, the plural the singular and the use of any gender shall be applicable to all genders. Time shall be of the essence as to all matters provided for in this Agreement.

15.     Termination by Seller. Notwithstanding anything herein to the contrary, Seller may terminate this Agreement: (i) if, at any time prior to its start of construction of the Phase One Infrastructure, (a) Seller determines, for any reason, that Seller will not develop the Subdivision as contemplated by this Agreement or that material changes in the Subdivision Plat are necessary or desirable, (b) the Subdivision is sold in its entirety or all of the stock of Seller is sold to a third party; or (c) if, following commencement of construction of the Phase One Infrastructure, Seller encounters unforeseen circumstances which render development of the Subdivision economically infeasible as determined by Seller.  In any such event, written notice of termination shall be provided to Purchaser at the address set forth above and upon acknowledgement of the termination, the Deposit shall be refunded to Purchaser, and thereafter neither Purchaser nor Seller shall have further rights or obligations hereunder.

WITNESS the following signatures;

| SELLER: | PURCHASER: |
|---|---|
| STONY POINT LAND, INC., a Virginia Corporation | Name: *Katherine P Hubbard* |
| By: *Lila H. Putney* | |
| Mark A. Putney | Name: *Thomas R Hubbard* |
| Its President / Vice | |

**VIRGINIA:**

## IN THE CIRCUIT COURT OF THE CITY OF RICHMOND
### John Marshall Courts Building

**THOMAS R. HUBBARD**

**and**

**KATHERINE P. HUBBARD**                                              **PLAINTIFFS,**

**v.**                                                    **Civil Action Number: _____**

**STONY POINT LAND, INC.**
**a Virginia corporation**
**Serve: Edward B. Kidd**
       **Registered Agent**
       **1001 Haxall Point**
       **15th Floor**
       **Richmond, VA 23218**
       **(City of Richmond),**                                    **DEFENDANT.**

### COMPLAINT

### COUNT I

Come this day the plaintiffs, Thomas R. Hubbard and Katherine P. Hubbard, by counsel, and for their Complaint in the above cause, respectfully state as follows:

1. That the parties hereto entered into a Real Estate Purchase Agreement dated September 21, 2006, wherein the defendant contracted to sell to the plaintiffs Lot 2 of Riverwatch Subdivision in the City of Richmond, VA.

2. That the Real Estate Purchase Agreement described hereinabove is subject to the provisions of the Virginia Property Owners' Association Act (Section 55-508 et seq. of the Code of Virginia, 1950, as amended).

3. That at no time has the defendant complied with the provisions of said Property Owners' Association Act in that it has failed to deliver to the plaintiffs a correct, accurate, and complete

1



Association Disclosure Packet.

4. That the plaintiffs, pursuant to Section 55-509.4 (C) of the Code of Virginia, 1950, as amended, have given valid notice of cancellation of the aforementioned contract to the defendant.

5. That the plaintiffs have not been notified that the Association Disclosure packet will not be available, and the Association disclosure packet has not been delivered to the plaintiffs.

6. That the plaintiffs made a deposit of Forty Five Thousand Dollars ($45,000.00) to the defendant towards the purchase price pursuant to the Real Estate Purchase Agreement described hereinabove, which deposit has not been returned to the plaintiffs by the defendant, despite demand for same.

7. That the defendant misrepresented to the plaintiffs that there was in fact a corporation designated as Riverwatch Property Owners Association, Inc., when in fact no such corporation was in existence or authorized by the Virginia State Corporation Commission. In fact, the Riverwatch Property Owners Association, Inc. was issued a corporate charter by the Virginia State Corporation Commission on May 22, 2008.

8. That accordingly, the defendant is indebted to the plaintiffs in the amount of Forty Five Thousand Dollars ($45,000.00), together with interest thereon from September 21, 2006 until fully paid, together with reasonable attorney's fees arising out of this action.

WHEREFORE, the plaintiffs, Thomas R Hubbard and Katherine P. Hubbard, by counsel, move this honorable Court for judgment against the defendant, Stony Point Land, Inc., a Virginia corporation, in the amount of Forty Five Thousand Dollars ($45,000.00), plus interest thereon at the legal rate from September 21, 2006 until fully paid, plus reasonable attorney's fees arising out of this action.

## COUNT II

In the alternative, should the Court find that the defendant has complied with the Virginia Property Owners' Association Act, and that the plaintiffs have failed to effect the termination of the

2

Real Estate Purchase Agreement described in Count I hereinabove, the plaintiffs allege as follows:

1. That the plaintiffs hereby reallege, replead, and adopt all allegations set forth in Count I hereinabove, as this the first paragraph of Count II.

2. That the date of the subject Real Estate Purchase Agreement was September 21, 2006; however, it was not until December 6, 2008 that the defendant gave notice to the plaintiffs that it was in compliance with the Real Estate Purchase Agreement in order that closing should occur.

3. That the subject Real Estate Purchase Agreement did not set forth a date certain for closing, accordingly, there is the implied term of reasonable delivery. A delay for approximately twenty-seven (27) months from time of Contract to time of delivery is in fact not a reasonable delivery, and as such, the defendant has breached the aforesaid Real Estate Purchase Agreement.

4. That in light of the fact that the Defendant has breached the aforementioned Real Estate Purchase Agreement, it owes to the plaintiffs the sum of Forty Five Thousand Dollars ($45,000.00), together with interest thereon at the legal rate from September 21, 2006 until fully paid, together with reasonable attorney's fees.

WHEREFORE, the plaintiffs, Thomas R Hubbard and Katherine P. Hubbard, by counsel, demand judgment against the defendant, Stony Point Land, Inc., a Virginia corporation, in the amount of Forty Five Thousand Dollars ($45,000.00), plus interest thereon at the legal rate from September 21, 2006 until fully paid, plus reasonable attorney's fees arising out of this action.

TRIAL BY JURY IS DEMANDED.

THOMAS R. HUBBARD
and
KATHERINE P. HUBBARD

By: _____
Of Counsel

_____, p.q.
Stephen C. Conte
BLACKBURN, CONTE, SCHILLING & CLICK, P.C.
300 West Main Street
Richmond, VA 23220-5630
(804) 782-1111
Fax: (804) 648-3914
VSB: 16709

VIRGINIA:

## IN THE CIRCUIT COURT OF THE CITY OF RICHMOND
### John Marshall Courts Building

|  |  |  |
|---|---|---|
| THOMAS R. HUBBARD | ) | |
| and | ) | |
| KATHERINE P. HUBBARD, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. CL09-000008 |
| STONY POINT LAND, INC., | ) | |
| Defendant. | ) | |

## ANSWER AND COUNTERCLAIM

For its Answer and Counterclaim, the defendant, Stony Point Land, Inc. ("Stony Point"), by counsel, states as follows:

## ANSWER

1.    In response to paragraph 1 of the Complaint, Stony Point admits that the plaintiffs and Stony Point entered into a Real Estate Purchase Agreement ("the Purchase Agreement") dated September 21, 2006 under which the plaintiffs agreed to purchase Lot 2 of the Riverwatch subdivision in the City of Richmond from Stony Point for a purchase price of $450,000.

2.    The allegations contained in paragraph 2 of the Complaint contain a legal conclusion to which no response is required.



3.     Stony Point denies the allegations contained in paragraph 3 of the Complaint.

4.     Stony Point denies the allegations contained in paragraph 4 of the Complaint.

5.     Stony Point denies the allegations contained in paragraph 5 of the Complaint.

6.     Stony Point admits the allegations contained in paragraph 6 of the Complaint, but denies that plaintiffs are entitled to the return of the deposit.

7.     Stony Point denies the allegations contained in the first sentence of paragraph 7 of the Complaint.  Stony Point admits the allegations contained in the second sentence of paragraph 7 of the Complaint.

8.     Stony Point denies the allegations contained in paragraph 8 of the Complaint.

9.     In response to paragraph 1 of Count II of the Complaint, Stony Point incorporates by reference its responses to paragraphs 1 through 8 of Count I of the Complaint.

10.     In response to paragraph 2 of Count II of the Complaint, Stony Point admits that the date of the Purchase Agreement was September 21, 2006, and that by letter dated December 6, 2008, Stony Point notified the Hubbards that Stony Point had completed the "Phase One Infrastructure" for the subdivision, and that plaintiffs were therefore obligated to close on the purchase of Lot 2 within ten days of that date.  Stony Point denies all other allegations of paragraph 2 of Count II of the Complaint.

11.     The first sentence of paragraph 3 of Count II of the Complaint refers to a document, which speaks for itself, and contains a legal conclusion, to which no response is

required. Stony Point denies the allegations contained in the second sentence of paragraph 3 of Count II of the Complaint.

12.     Stony Point denies the allegations contained in paragraph 4 of Count II of the Complaint.

13.     Stony Point denies all allegations of the Complaint not specifically admitted here in.

14.     Stony Point has fulfilled all its obligations under the Purchase Agreement, but plaintiffs have refused to close on the purchase of Lot 2, which constitutes a breach of contract on their part.

15.     Stony Point is entitled to retain the $45,000 deposit under the terms of the Purchase Agreement.

16.     Plaintiffs' claims are barred by waiver and estoppel.

WHEREFORE, Stony Point demands that the Complaint be dismissed and that it be awarded its costs and attorney's fees incurred herein.

## COUNTERCLAIM

1.     Defendant, Stony Point Land, Inc. ("Stony Point"), is a Virginia corporation with its principal place of business in the City of Richmond, Virginia.

2.     Upon information and belief, plaintiffs Thomas R. Hubbard and Katherine P. Hubbard are a married couple residing in the City of Richmond, Virginia.

3.     Stony Point and plaintiffs entered into a Real Estate Purchase Agreement dated September 21,2006 ("the Purchase Agreement") under which the plaintiffs agreed to purchase from Stony Point a parcel of land identified as Lot 2 in the Riverwatch subdivision in the City of Richmond ("Lot 2"), for a purchase price of $450,000. Under the Purchase

3

Agreement, settlement was to take place not later than ten days following receipt by plaintiffs of notice from Stony Point that Stony Point had completed the Phase One Infrastructure, as that term was defined in the Purchase Agreement. The Phase One Infrastructure included a road providing access to Lot 2 from Cherokee Road and an emergency access road as required by the City of Richmond, and the extension of utilities to Lot 2. The Purchase Agreement further recognized that Stony Point could not begin work on the Phase One Infrastructure until certain permits were granted by the City.

4.      Stony Point completed the Phase One Infrastructure pursuant to the terms of the Purchase Agreement prior to December 6, 2008, and has complied with all of its obligations under the Purchase Agreement.

5.      By letter dated December 6, 2008, Stony Point notified the plaintiffs of the completion of the Phase One Infrastructure, and that plaintiffs were therefore obligated to close on the purchase of Lot 2 within ten days.

6.      Plaintiffs have failed and refused to purchase Lot 2 pursuant to the Purchase Agreement, despite their obligation to do so. Plaintiffs' failure to close on the purchase of Lot 2 constitutes a breach of contract.

### COUNT I (Specific Performance)

7.      Stony Point incorporates by reference the allegations contained in paragraphs 1 through 6 of the Counterclaim as if stated in full herein.

8.      At all relevant times, Stony Point has been able and willing to convey to plaintiffs title in accordance with the Purchase Agreement.

9. Stony Point is entitled to the entry of an order compelling plaintiffs to specifically perform their obligations under the Purchase Agreement. Stony Point has no adequate remedy at law.

## COUNT II (Breach of Contract)

10. Stony Point incorporates by reference the allegations contained in paragraphs 1 through 6 of its Counterclaim as if stated in full herein.

11. In the alternative to Stony Point's claim for specific performance, and in the event that the Court finds that specific performance is not appropriate for any reason, Stony Point asserts this claim for damages for breach of contract against plaintiffs.

12. Stony Point has and will suffer damages as a result of plaintiffs' breach of contract. Such damages include, but are not limited to, loss of the benefit of Stony Point's bargain with the plaintiffs, and additional interest and real estate taxes that must be paid by Stony Point as a result of plaintiffs' failure to purchase Lot 2 on or before December 16, 2008 as they were obligated to do under the Purchase Agreement.

13. Stony Point has and will suffer damages in at least the amount of $200,000, and possibly more, as a result of plaintiffs' breach of contract.

## RELIEF DEMANDED

WHEREFORE, Stony Point demands the following relief:

(1) A judgment ordering plaintiffs to specifically perform their obligations under the Purchase Agreement, including but not limited to payment to Stony Point of the contract price of $450,000, less the deposit of $45,000;

(2) In the alternative, a judgment in favor of Stony Point against plaintiffs for all damages suffered by Stony Point as a result of plaintiffs' breach of contract, in the amount of not less than $200,000;

(3) An award to Stony Point of interest and its attorney's fees and costs incurred herein; and

(4) All additional relief to which Stony Point may be entitled.

STONY POINT LAND, INC.

By _____
Of Counsel

John K. Burke, Jr. (VSB #16798)
Joshua D. Heslinga (VSB #73036)
TROUTMAN SANDERS LLP
P. O. Box 1122
Richmond, VA 23218
Telephone: (804) 697-1210
Facsimile: (804) 698-5105

Counsel for Defendant

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing Answer and Counterclaim has been sent by facsimile and mail, postage paid, to Stephen C. Conte, Esquire, Blackburn, Conte, Schilling & Click, P.C., 300 West Main Street, Richmond, Virginia 23220-5630 on this 5th day of February, 2009.

_____

1798302

**VIRGINIA:**

IN THE CIRCUIT COURT OF THE CITY OF RICHMOND
John Marshall Courts Building

THOMAS R. HUBBARD          )
                          )
and                       )
                          )
KATHERINE P. HUBBARD,      )
                          )
                Plaintiffs, )
                          )
v.                        )          Civil Action No. CL09-000008
                          )
STONY POINT LAND, INC.,    )
                          )
                Defendant.  )

## ORDER

On the 27th day of May, 2009 the parties, by counsel, came to be heard upon the

defendant's Objection to Plaintiffs' Demand for Jury Trial; and the plaintiffs' Motion in Limine;

and the said Objection and Motion were argued by counsel for the respective parties.

UPON CONSIDERATION WHEREOF, the Court hereby denies the defendant's

Objection to Plaintiffs' Demand for Jury Trial, and orders that the plaintiffs are entitled to a trial

with jury on their Complaint.

UPON FURTHER CONSIDERATION, the Court hereby grants in part, and

denies in part, the plaintiffs' Motion in Limine.  Specifically, the defendant shall be allowed to

place into evidence the fact that the plaintiffs own and were unsuccessful in their efforts to sell

certain real property in the State of Washington; however, the defendant will not be able to


EXHIBIT
D

mention, or place into evidence the value thereof, unless argument or evidence submitted by

plaintiffs makes the value of such real estate relevant.

ENTERED: 9 / 1 . / 09

A Copy,
Teste: BEVILL M. DEAN, CLERK

BY: _____ D.C.

_____ Judge

Seen and agreed to as to the ruling applicable to the defendant's Objection to Plaintiffs' Demand
for Jury Trial, and objected to as to the ruling applicable to the plaintiffs' Motion in Limine.

Stephen C. Conte (VSB #16709)
BLACKBURN, CONTE, SCHILLING & CLICK, P.C.
300 West Main Street
Richmond, VA 23220-5630
(804) 782-1111
Fax: (804) 648-3914
Email: sconte@bcscpc.com
    *Counsel for Plaintiffs*

Seen and objected to as to the ruling applicable to the defendant's Objection to Plaintiffs'
Demand for Jury Trial for the reasons stated in such Objection and at the hearing on May 27,
2009, including but not limited to that plaintiffs seek the cancellation and/or rescission of a real
estate purchase agreement, which is an equitable claim for which plaintiffs are not entitled to a
trial by jury; and objected to as to the partial granting of plaintiffs' Motion in Limine regarding
the value of the real property located in the State of Washington, for the reasons stated by
counsel for defendant at the hearing on May 27, 2009, including but not limited to that the value
of such real estate is admissible on the issue of the credibility of the plaintiffs' testimony
regarding the alleged lack or receipt of homeowners' association documents, and plaintiffs'
motive and bias.

John K. Burke, Jr. (VSB #16798)
TROUTMAN SANDERS LLP
P. O. Box 1122
Richmond, VA 23218
(804) 697-1200
Fax: (804) 697-1339
john.burke@troutmansanders.com
    *Counsel for Defendant*

184040lvl

- 2 -



**VIRGINIA:**

## IN THE CIRCUIT COURT OF THE CITY OF RICHMOND
### John Marshall Courts Building

**THOMAS R. HUBBARD**

**and**

**KATHERINE P. HUBBARD**                                    **PLAINTIFFS,**

**v.**                                           **Civil Action Number: CL09-8**

**STONY POINT LAND, INC.,**
**a Virginia corporation,**                                **DEFENDANT.**

### <u>PLAINTIFFS' SECOND MOTION IN LIMINE</u>

      Come this day the plaintiffs, Thomas R. Hubbard and Katherine P. Hubbard, by counsel, and for their Second Motion in Limine respectfully state as follows:

1.     That the plaintiffs have filed certain supplemental objections to the defendant's witnesses and exhibits (copy attached hereto and incorporated herein by reference).

2.     That the Riverwatch Property Owners Association, Inc. was not incorporated until May 22, 2008, accordingly, any introduction of disclosures, receipt of disclosures, discussion of disclosures, and/or delivery of same prior to May 22, 2008 should be excluded from trial as the corporate entity was not in existence until May 22, 2008, and, therefore, by definition, could not make or give disclosures or communicate in any manner whatsoever.

3.     That should the defendant at a later date identify any other exhibits it intends to introduce at trial regarding the above which occurred prior to May 22, 2008, it should also be excluded for the reasons set forth hereinabove.

4.     That the plaintiffs have objected to other proposed exhibits which should also be excluded for the reasons set forth in their objections.

      WHEREFORE the plaintiffs, Thomas R. Hubbard and Katherine P. Hubbard, by counsel respectfully request that the court rule that the above exhibits be excluded at trial.



**EXHIBIT**

*E*

THOMAS R. HUBBARD
and
KATHERINE P. HUBBARD

By: _____
Of Counsel

_____, p.q.
Stephen C. Conte
BLACKBURN, CONTE, SCHILLING & CLICK, P.C.
300 West Main Street
Richmond, VA 23220-5630
(804) 782-1111
Fax: (804) 648-3914
VSB: 16709
Email: sconte@bcscpc.com

## CERTIFICATE

I hereby certify that a true copy of the foregoing document was mailed via first class mail, postage prepaid, this 11th day of June, 2009, to John K. Burke, Jr., Esquire, P.O. Box 1122, Richmond, VA 23218.

_____
Stephen C. Conte

**INSTRUCTION NO.:** _____

The association shall make available to an owner or his authorized agent within 14 days after receipt of a written request therefore and receipt of the appropriate fee, an association disclosure packet, which, upon receipt, the seller shall deliver to the purchaser. The information contained in the association disclosure packet shall be current as of a date specified on the association disclosure packet. If hand or electronically delivered, the written request and fee are deemed received on the date of delivery. If sent by United States mail, the request and the fee are deemed received six days after the postmark date. An association disclosure packet shall contain the following:

1.      The name of the association and, if incorporated, the state in which the association is incorporated and in the name and address of its registered agent in Virginia;

2.      A statement of any expenditure of funds approved by the association or the board of directors which shall require an assessment in addition to the regular assessment during the current year or the immediately succeeding fiscal year;

3.      A statement, including the amount of all assessments and any other mandatory fees or charges currently imposed by the association and associated with the purchase, disposition and maintenance of the lot and to the right of use of common areas, and the status of the account;

4.      A statement whether there is any other entity of facility to which the lot owner may be liable for fees or other charges;

5.      The current reserve study report or summary thereof, a statement of the status and amount of any reserve or replacement fund and any portion of the fund allocated by the board of directors for a specified project;

6.      A copy of the association's current budget or a summary thereof prepared by the association, and a copy of its statement of income and expenses or statement of its financial condition for the last fiscal year for which such statement is available;

7.      A statement of the nature and status of any pending suit or unpaid judgment to which the association is a party which either could or would have a material impact on the association or its members or which relates to the lot being purchased;

8.      A statement setting forth what insurance coverage is provided for all lot owners by the association, including any fidelity bond maintained by the association, and what additional insurance would normally be secured by each individual lot owner;

9.      A statement that any improvement or alteration made to the lot, or uses made of the lot or common area assigned thereto by the prior lot owner, are not in violation of any of the instruments referred to in subdivision 12 of this subsection;

10.     A statement setting forth any restriction, limitation, or prohibition on the right of a lot owner to place a sign on the owner's lot  advertising the lot for sale;

11.    A statement setting forth any restriction, limitation, or prohibition on the right of a lot owner to display any flag on the owner's lot including, but not limited to reasonable restrictions as to the size, place and manner of placement or display of such flag and the installation of any flagpole or similar structure necessary to display such flag;

12.    A copy of the current declaration, the associations articles of incorporation and bylaws, and any rules and regulations or architectural guidelines adopted by the association.

13.    A copy of the notice given to the lot owner by the association of any current or pending rule or architectural violation;

14.    A copy of the fully competed one-page cover sheet developed by the Real Estate Board pursuant to §54.1-2105.1

15.    Certification, if applicable, that the association has filed with the Real Estate Board the Annual report required by §55-516.1; which certification shall indicate the filing number assigned by the Real Estate Board and the expiration date of such filing.

§55-512 of the Code of Virginia, 1950, as amended (2006 Edition)

**INSTRUCTION NO.: _____**

The plaintiffs may cancel the contract at any time prior to settlement if the plaintiffs have not been notified that the association disclosure packet will not be available and the association disclosure packet is not delivered to the plaintiffs. Delivery shall be made by hand delivery or delivered with the consent of the purchaser by electronic means and a receipt obtained.

§55-511(c) of the Code of Virginia, 1950, as amended (2006 edition)

VIRGINIA:

FILE

IN THE CIRCUIT COURT OF THE CITY OF RICHMOND
John Marshall Courts Building

THOMAS R. HUBBARD

and

KATHERINE P. HUBBARD                                    PLAINTIFFS,

v.                                                      Civil Action Number: CL09-8

STONY POINT LAND, INC.,
a Virginia corporation,                                 DEFENDANT.

## PLAINTIFFS' SUPPLEMENTAL OBJECTIONS TO THE DEFENDANT'S WITNESSES AND EXHIBITS

Come this day the plaintiffs, Thomas R. Hubbard and Katherine P. Hubbard, by counsel, and for their Objections to the defendant's witnesses and exhibits respectfully state as follows:

1.      The plaintiffs object to the utilization by the defendant of both Mark Kukoski and Richard Niess, as one will testify as to the issues of specific performance, and the other will testify as to the issues of law damages.  This violates the rule whereby the defendant must make an election of remedies.

2.      The plaintiffs object to item 3 of the defendant's proposed exhibits (Homeowners' Association disclosure documents for Riverwatch on the James dated August 14, 2006) as the contract between the parties requires (at paragraph 12.(a), and the provisions of §55-111 (A)(ii) of the Code of Virginia, 1950, as amended) the defendant "...to obtain from the Property Owners' Association an association disclosure packet and provide it to the purchaser..."  The Property Owners' Association was not incorporated until May 22, 2008, accordingly, any documents given to the purchaser could not have come from the Property Owners' Association.

3.      The plaintiffs object to item 4 of the defendant's proposed exhibits (Homeowners'

Association disclosure documents dated August 14, 2006 produced by Hubbards) as the contract between the parties requires (at paragraph 12.(a), and the provisions of §55-111 (A)(ii) of the Code of Virginia, 1950, as amended) the defendant "...to obtain from the Property Owners' Association an association disclosure packet and provide it to the purchaser..." The Property Owners' Association was not incorporated until May 22, 2008, accordingly, any documents given to the purchaser could not have come from the Property Owners' Association.

4.    The plaintiffs object to item 5 of the defendant's proposed exhibits (Association Disclosure Packet Notice signed by Hubbards and dated September 15, 2006) as the contract between the parties requires (at paragraph 12.(a), and the provisions of §55-111 (A)(ii) of the Code of Virginia, 1950, as amended) the defendant "...to obtain from the Property Owners' Association an association disclosure packet and provide it to the purchaser..." The Property Owners' Association was not incorporated until May 22, 2008, accordingly, any documents given to the purchaser could not have come from the Property Owners' Association.

5.    The plaintiffs object to item 6 of the defendant's proposed exhibits (Property Owners' Association Disclosure signed by Hubbards and dated September 22, 2006) as the contract between the parties requires (at paragraph 12.(a), and the provisions of §55-111 (A)(ii) of the Code of Virginia, 1950, as amended) the defendant "...to obtain from the Property Owners' Association an association disclosure packet and provide it to the purchaser..." The Property Owners' Association was not incorporated until May 22, 2008, accordingly, any documents given to the purchaser could not have come from the Property Owners' Association.

6.    The plaintiffs object to item 7 of the defendant's proposed exhibits (Association Disclosure Packet Notice signed by Hubbards and dated September 28, 2006) as the contract between the parties requires (at paragraph 12.(a), and the provisions of §55-111 (A)(ii) of the

Code of Virginia, 1950, as amended) the defendant "...to obtain from the Property Owners' Association an association disclosure packet and provide it to the purchaser..." The Property Owners' Association was not incorporated until May 22, 2008, accordingly, any documents given to the purchaser could not have come from the Property Owners' Association.

7.      The plaintiffs object to item 8 of the defendant's proposed exhibits (Email from Lynn Pritchard to Tammy Glenn and Hubbards dated September 22, 2006) as the contract between the parties requires (at paragraph 12.(a), and the provisions of §55-111 (A)(ii) of the Code of Virginia, 1950, as amended) the defendant "...to obtain from the Property Owners' Association an association disclosure packet and provide it to the purchaser..." The Property Owners' Association was not incorporated until May 22, 2008, accordingly, any documents given to the purchaser could not have come from the Property Owners' Association.

8.      The plaintiffs object to item 9 of the defendant's proposed exhibits (Two page string of emails, top of first page is email from Tammy Glenn to Katherine Hubbard dated November 12, 2006) as the contract between the parties requires (at paragraph 12.(a), and the provisions of §55-111 (A)(ii) of the Code of Virginia, 1950, as amended) the defendant "...to obtain from the Property Owners' Association an association disclosure packet and provide it to the purchaser..." The Property Owners' Association was not incorporated until May 22, 2008, accordingly, any documents given to the purchaser could not have come from the Property Owners' Association.

9.      The plaintiffs object to item 23 of the defendant's proposed exhibits (Exchange of emails between Tom Hubbard, Karen Snyder Bailey and Lynn Pritchard dated August 27, 2008) as the contract between the parties requires (at paragraph 12.(a), and the provisions of §55-111 (A)(ii) of the Code of Virginia, 1950, as amended) the defendant "...to obtain from the Property

Owners' Association an association disclosure packet and provide it to the purchaser..." The Property Owners' Association was not incorporated until May 22, 2008, accordingly, any documents given to the purchaser could not have come from the Property Owners' Association. In addition, the disclosure dated July 28, 2008 comes not from the Property Owners' Association, but rather comes from the defendant in violation of the aforesaid contract terms and the Code.

10.     The plaintiffs object to item 27 of the defendant's proposed exhibits (Letter dated September 16, 2008 from John Burke to Stephen Conte) as this letter contains repeated hearsay evidence.

11.     The plaintiffs object to item 29 of the defendant's proposed exhibits (July 28, 2008 Homeowners' Association disclosure documents for Riverwatch on the James) as the contract between the parties requires (at paragraph 12.(a), and the provisions of §55-111 (A)(ii) of the Code of Virginia, 1950, as amended) the defendant "...to obtain from the Property Owners' Association an association disclosure packet and provide it to the purchaser..." The Property Owners' Association was not incorporated until May 22, 2008, accordingly, any documents given to the purchaser could not have come from the Property Owners' Association. In addition, the disclosure dated July 28, 2008 comes not from the Property Owners' Association, but rather comes from the defendant in violation of the aforesaid contract terms and the Code.

12.     The plaintiffs object to item 30 of the defendant's proposed exhibits (Copy of July 28 Homeowners' Association disclosure documents produced by Hubbards) as the contract between the parties requires (at paragraph 12.(a), and the provisions of §55-111 (A)(ii) of the Code of Virginia, 1950, as amended) the defendant "...to obtain from the Property Owners' Association an association disclosure packet and provide it to the purchaser..." The Property Owners' Association was not incorporated until May 22, 2008, accordingly, any documents

given to the purchaser could not have come from the Property Owners' Association. In addition, the disclosure dated July 28, 2008 comes not from the Property Owners' Association, but rather comes from the defendant in violation of the aforesaid contract terms and the Code.

13.    The plaintiffs object to item 31 of the defendant's proposed exhibits (Resume of Mark Kukoski) as he will be available to testify at trial, and it is repetitive and redundant to submit a written resume as tangible evidence.

14.    The plaintiffs object to item 32 of the defendant's proposed exhibits (Resume of Richard Niess) as he will be available to testify at trial, and it is repetitive and redundant to submit a written resume as tangible evidence.

15.    The plaintiffs object to item 33 of the defendant's proposed exhibits (Picture of Hubbards' house on Charmian Road) as this is irrelevant to the issues in this case, and injects the plaintiffs' financial condition into the trial. This exact issue was argued before Judge Taylor on May 27, 2009, and he ruled from the bench that the value of real property owned by the plaintiffs shall not be introduced into evidence at trial. By submitting a picture, the defendant attempts to subterfuge the ruling of Judge Taylor.

16.    The plaintiffs object to item 37 of the defendant's proposed exhibits (Picture of house in Newcastle, Washington) as this is irrelevant to the issues in this case, and injects the plaintiffs' financial condition into the trial. This exact issue was argued before Judge Taylor on May 27, 2009, and he ruled from the bench that the value of real property owned by the plaintiffs shall not be introduced into evidence at trial. By submitting a picture, the defendant attempts to subterfuge the ruling of Judge Taylor.

THOMAS R. HUBBARD
and
KATHERINE P. HUBBARD

By: _____
            Of Counsel


_____, p.q.
Stephen C. Conte
BLACKBURN, CONTE, SCHILLING & CLICK, P.C.
300 West Main Street
Richmond, VA 23220-5630
(804) 782-1111
Fax: (804) 648-3914
VSB: 16709
Email: sconte@bcscpc.com


## CERTIFICATE

I hereby certify that a true copy of the foregoing document was mailed via first class mail, postage prepaid, this 4th day of June, 2009, to John K. Burke, Jr., Esquire, P.O. Box 1122, Richmond, VA 23218.

_____
Stephen C. Conte



**Commonwealth of Virginia**

**State Corporation Commission**


Enter


Signoff


Help

Print

```
WEB#548                          CIS                    06/03/09
TCP00373  CISM0180        CORPORATE DATA INQUIRY        14:31:01

     CORP ID: 0695140 - 4   STATUS: 00 ACTIVE      STATUS DATE: 05/22/08
     CORP NAME: Riverwatch Property Owners Association, Inc.


DATE OF CERTIFICATE: 05/22/2008 PERIOD OF DURATION:        INDUSTRY CODE: 00
STATE OF INCORPORATION: VA VIRGINIA        STOCK INDICATOR: N NON-STOCK
MERGER IND:                       CONVERSION/DOMESTICATION IND:
GOOD STANDING IND: N NO A-
REPORT   MONITOR INDICATOR:
CHARTER FEE: 50.00     MON NO:           MON STATUS:  MONITOR DTE:
     R/A NAME: EDWARD B KIDD

     STREET: 1001 HAXALL POINT                      AR RTN MAIL:  Y


       CITY: RICHMOND              STATE : VA  ZIP: 23219
    R/A STATUS: 4 ATTORNEY        EFF. DATE: 05/22/08  LOC.: 216
  ACCEPTED AR#: 000 00 0000  DATE:                     RICHMOND CITY
  CURRENT AR#: 000 00 0000  DATE:          STATUS:  ASSESSMENT INDICATOR: 0
  YEAR   FEES    PENALTY    INTEREST    TAXES    BALANCE      TOTAL SHARES
   09    25.00                                    25.00
   COMMAND: .................................................................
```

NOTE: Function Key usage varies depending on the Application Screen.
For specifics, refer to Function Key Documentation.

**Commonwealth of Virginia**



**State Corporation Commission**

| Enter |
| Signoff |
| Help |
| Print |

```
WEB#768                              CIS                    06/03/09
TCP00593  CISM1001   OFFICERS/DIRECTORS AND PRINCIPAL OFFICE   14:44:57

CORPORATE ID: 0695140 4          CURRENT AR#            DATE
CORP NAME: Riverwatch Property Owners Association, Inc.

        STREET:

        CITY:                    STATE:      ZIP:
                                             DIR REQUIRED: Y
 S  C            OFFICERS/DIRECTORS DISPLAY FOR AR#
 E  A                   NAME                      TITLE      SIGN
 L  T
    D   ROBERT LOFTIS                          DIRECTOR
    D   MARK A PUTNEY                          DIRECTOR
    D   LILA H PUTNEY                          DIRECTOR



        COMMAND: .........................................................
```

NOTE: Function Key usage varies depending on the Application Screen.
For specifics, refer to Function Key Documentation.

DEFENDANT'S
EXHIBIT
Proposed #1

RIVERWATCH...on the James at Stony Point

REAL ESTATE PURCHASE AGREEMENT

This REAL ESTATE PURCHASE AGREEMENT (this "Agreement") is dated as of the _21st_ day of ~~August~~ *September*, 2006, by and between STONY POINT LAND, INC., a Virginia corporation, with a business address of 9030 Stony Point Parkway, Suite 500, Richmond, Virginia 23235 ("Seller"); and _Thomas R. and Katherine P. Hubbard_ with an address of _15624 SE 83rd Court, Newcastle, WA 98059_ ("Purchaser"), and provides as follows:

FOR and in consideration of the mutual covenants hereinafter set forth, the parties hereto agree as follows:

1.  **Sale and Purchase.** Seller agrees to sell and Purchaser agrees to purchase that certain parcel of land belonging, lying and being in the City of Richmond, Virginia (the "City"), identified as Lot 2 (the "Lot") on the plat of the Riverwatch subdivision (the "Subdivision") prepared by Balzer & Associates, Inc., a copy of which is attached hereto as Exhibit A as a part hereof (the "Subdivision Plat"), together with all easements appurtenant to the Lot. Purchaser acknowledges that the Subdivision Plat is subject to minor revisions in connection with the final approval thereof by the City of Richmond; provided, however no such revision shall materially affect the size or boundaries of the Lot or the general layout without the consent of Purchaser.

2.  **Purchase Price.** The purchase price for the Lot is Four Hundred Fifty Thousand Dollars ($450,000.00), and shall be paid by (i) application of the Deposit (as hereinafter defined) and (ii) wire transfer to Seller's account at settlement.

3.  **Deposit.** Purchaser has made a deposit with Seller of Forty-five Thousand Dollars ($45,000.00) (the "Deposit") by check, receipt of which is hereby acknowledged. If this transaction is not consummated, the Deposit shall be retained by Seller or refunded to Purchaser in accordance with this Agreement.

4.  **Title.**

    (a)  Seller agrees to convey the Lot to Purchaser by general warranty deed free and clear from all tenancies and liens (except for real estate taxes for the current year), but subject to (i) the Declaration (as hereinafter defined), (ii) all applicable ordinances and regulations of the City of Richmond and (iii) other easements, restrictions, covenants and conditions not adversely affecting the Lot for residential use which are currently of record or which are executed and recorded in connection with the development of the Subdivision.

    (b)  The Lot shall be conveyed subject to a declaration of covenants, conditions and restrictions in form and substance substantially similar to the form of Declaration of Covenants, Conditions and Restrictions for Riverwatch Property Owners Association, Inc., dated June 30, 2006 (the "Declaration") and, in accordance with the Declaration, the Property must comply with architectural and development standards in form and substance substantially similar to the draft document titled Riverwatch...on the James, Richmond, Virginia, Architectural Design Standards with an issue date of June 30, 2006 (the "Standards"), each of which have been provided to Purchaser. Purchaser acknowledges receipt of the Declaration and the Standards and agrees to comply with all of the terms and conditions thereof, as applicable.

5.  **Settlement.** Settlement shall be made at the offices of Purchaser's attorney or such other place as Purchaser and Seller may agree, not later than ten (10) days following receipt by Purchaser of notice from Seller that Seller has completed the Phase One Infrastructure (as hereinafter defined). At settlement, Seller will deliver to Purchaser a general warranty deed conveying title to the Lot to Purchaser, an affidavit regarding parties in possession and mechanics' and materialmens' liens to the order of and acceptable to Purchaser's title insurance company and an affidavit of non-foreign status executed by Seller. Seller shall pay for preparation of the deed and affidavits to be provided by Seller, the recording tax applicable to grantors and its attorneys' fees. All other settlement costs incurred by Purchaser and all other taxes and fees required for recordation of the deed shall be paid by Purchaser. Possession of the Lot shall be delivered to Purchaser upon settlement. At settlement, Seller shall have completed formation of the Riverwatch Homeowners' Association, as provided for in the Declaration and shall convey to such association common areas consisting of (i) approximately five and seven-tenths (57/10) acres located between the northern line of Cherokee Road and the James River (the "Riverfront Common Area") and (ii) those areas located south of Cherokee Road identified on the Subdivision Plat as common areas.

6.  **Inspection of Lot.** Purchaser represents that an inspection satisfactory to Purchaser has been made of the Lot and Purchaser agrees to accept the Lot in its present condition, subject to (i) Seller's completion of demolition and removal of such portion, if any, of the two (2) existing houses and swimming pool located within the Subdivision which affect the Lot which shall be performed prior to settlement and (ii) Seller's completion of the required infrastructure as provided in Paragraph 8 of this Agreement.

7.  **Prorations.** All real estate taxes and annual assessments levied pursuant to the Declaration shall be prorated as of the date of settlement.

8.      Infrastructure.  Seller agrees to construct infrastructure improvements for the Subdivision, which shall be constructed in two (2) phases.  The "Phase One Infrastructure" shall consist of improvements necessary for issuance by the City of permits for the construction of a residential dwelling on lots within the Subdivision, including (i) a road providing access to the Lot from Cherokee Road and an emergency access road as required by the City, each as shown on the Subdivision Plat (collectively, the "Roads") exclusive of the top coat of asphalt; and (ii) the extension of gas, water, sanitary sewer, electric, telephone and cable utilities to the Lot.  The "Phase Two Infrastructure" shall consist of improvements that can be constructed concurrent with construction of a dwelling on lots within the Subdivision, including (i) an entry feature at the entrance from Cherokee Road including columns, fencing and landscaping; and street trees on the entry road, all as shown conceptually on the preliminary landscape plan by Higgins & Gerstenmaier attached hereto as Exhibit B (the "Preliminary Landscape Plan"); (ii) improvements to the Riverfront Common Area consisting of (a) selective thinning and removal of trees as permitted by law, (b) four-board wooden or similar fencing along the Cherokee Road line of the Riverfront Common Area including a vehicular gate, and (c) a small parking area, all as shown conceptually on the Preliminary Landscape Plan; (iii) a pedestrian trail leading to the James River; (iv) all traffic control signage required by the City; (v) street identification signs; and (vi) the final coat of asphalt on the Roads.  Seller shall commence construction of the Phase One Infrastructure as soon as practicable after issuance of the required permits by the City, which are expected to be available by September 30, 2006 and shall thereafter diligently pursue completion thereof.  As soon as practicable following settlement, Seller shall commence construction of the Phase Two Infrastructure and shall thereafter diligently pursue completion thereof.  Subject to extensions for events beyond the reasonable control of Seller, the Phase Two Infrastructure shall be completed no later than the time the first home within the Subdivision has been completed, as evidenced by issuance of a certificate of occupancy by the City.

9.      Construction.
        (a)      Purchaser acknowledges that the purchase of the Lot is for the purpose of constructing a single-family residential dwelling thereon consistent with the terms of the Declaration, the Standards and all applicable ordinances, laws, codes and regulations, and agrees that such construction shall be performed in accordance with the requirements of same and of this Agreement.
        (b)      Purchaser shall not initiate any site preparation or construction activity on the Lot except in accordance with plans approved in accordance with the Declaration and the Standards.
        (c)      Purchaser acknowledges that it will be responsible for payment of all utility connection fees and all costs associated with the issuance of the building permit from the City.

10.      Survive Settlement.  The provision of paragraphs 8, 9 and 11 shall survive settlement and transfer of legal title to the Lot.

11.      Real Estate Brokerage.  Purchaser and Seller each represents and warrants to the other that this Agreement has resulted between the parties without the assistance of any agent, broker or finder being involved other than Joyner Fine Properties ("Listing Broker") and *Cal Signature Realty* ("Selling Broker").  Selling Broker if any is to be paid a fee of three percent (3 %) of the gross sales price by Seller.  Listing Broker is to be paid the fee stated in the listing agreement executed by Seller and Listing Broker, less any amount due Selling Broker.  Seller hereby authorizes and directs the settlement agent to disburse to the Listing Broker and the Selling Broker from Seller's proceeds the respective brokerage fees at settlement.  In the event there are fees or commissions payable to any other person or firm on account of the sale and purchase of the Lot, such fees or commissions shall be the full responsibility of the party whose actions resulted in such a claim for fees or commissions.  Purchaser acknowledges that Seller has disclosed to Purchaser that certain officers of Seller are licensees of the Virginia Real Estate Board, but no brokerage commissions or compensation is due to any such officers.

12.      Statutory Notices.  The following notices are provided as required by the Code of Virginia.

        (a)      Property Owners' Association Disclosure.  Seller represents that the Lot Property is located within a development which is subject to the Virginia Property Owners' Association Act (Sections 55-508 et. seq. of the Code of Virginia) (the "Act").  If the Property is within such a development, the Act requires Seller to obtain from the property owners' association an association disclosure packet and provide it to Purchaser or to advise Purchaser that the packet is not available.  The information contained in the association disclosure packet shall be current as of the specified date on the disclosure packet obtained by Seller.  Purchaser may cancel this Agreement (a) within 3 days after the date of this Agreement, if on or before the date that Purchaser signs this Agreement, Purchaser receives the association disclosure packet or is notified that the association disclosure packet is not available; (b) within 3 days after receiving the association disclosure packet, if the association disclosure packet or notice that the association disclosure packet will not be available is hand delivered or delivered with the consent of Purchaser by electronic means and a receipt obtained; or (c) within 6 days after the postmark date if the association disclosure packet or notice that the association disclosure packet will not be available is sent to Purchaser by United States mail.  Purchaser may also cancel this Agreement at any time prior to settlement if Purchaser has not been notified that the association disclosure packet will not be available and the association disclosure packet is not delivered to Purchaser.  Notice of cancellation shall be hand-delivered or sent by United States mail, return receipt requested, to Seller (owner) or his agent.  Such cancellation shall be without penalty, and Seller shall cause any deposit to be returned promptly to Purchaser, but not later than thirty days from the date of cancellation.  The right to receive the association disclosure packet

and to cancel this Agreement terminates at settlement. If Purchaser has received the association disclosure packet, Purchaser has a right to request an update of such disclosure packet from the property owners' association. A request for an updated disclosure packet does not extend the cancellation periods set forth above. Purchaser may be required to pay a fee for all costs incurred in updating the association disclosure packet. Purchaser acknowledges that it has received the association disclosure packet prior to the date it signed this Agreement.

(b) Mechanic's Lien Notification. Virginia law (Va. Code Ann. § 43-1 *et seq.*) permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against the Lot. This lien may be filed at any time after the work is commenced or the material is furnished, but not later than the earlier of (i) 90 days from the last day of the month in which the lienor last performed work or furnished materials or (ii) 90 days from the time the construction, removal, repair or improvement is terminated. AN EFFECTIVE LIEN FOR WORK PERFORMED PRIOR TO THE DATE OF SETTLEMENT MAY BE FILED AFTER SETTLEMENT. LEGAL COUNSEL SHOULD BE CONSULTED.

13.    Entire Agreement; Amendments. This Agreement contains the entire agreement between Seller and Purchaser relating to the Lot and supersedes all prior contemporaneous negotiations, understanding and agreements, written or oral, between the parties. This Agreement shall not be amended or modified and no waiver of any provision shall be effective unless set forth in a written instrument authorized and executed with the same formality as this Agreement. This Agreement is binding upon and shall inure to the benefit of the parties hereto and their respective heirs, devisees, legal and personal representatives, assigns, and successors in interest; provided, however, Purchaser may not assign this Agreement or any of its rights or interest therein without the prior written consent of Seller.

14.    Miscellaneous. The section headings and captions contained herein are for reference purposes only and shall not in any way affect the meaning and interpretation of the terms of this Agreement. All questions with respect to the construction of this Agreement and the rights and liabilities of the parties hereto shall be determined in accordance with the applicable provisions of the laws of the Commonwealth of Virginia. This Agreement may be executed in any number of duplicate originals or counterparts, all of which shall constitute a single agreement. Any duplicate original on which the signatures of both parties shall appear shall be deemed an original of this Agreement. Any number of counterparts on which the signatures of both parties shall appear shall constitute a duplicate original. As used herein the singular shall include the plural, the plural the singular and the use of any gender shall be applicable to all genders. Time shall be of the essence as to all matters provided for in this Agreement.

15.    Termination by Seller. Notwithstanding anything herein to the contrary, Seller may terminate this Agreement: (i) if, at any time prior to its start of construction of the Phase One Infrastructure, (a) Seller determines, for any reason, that Seller will not develop the Subdivision as contemplated by this Agreement or that material changes in the Subdivision Plat are necessary or desirable, (b) the Subdivision is sold in its entirety or all of the stock of Seller is sold to a third party; or (c) if, following commencement of construction of the Phase One Infrastructure, Seller encounters unforeseen circumstances which render development of the Subdivision economically infeasible as determined by Seller. In any such event, written notice of termination shall be provided to Purchaser at the address set forth above and upon acknowledgement of the termination, the Deposit shall be refunded to Purchaser, and thereafter neither Purchaser nor Seller shall have further rights or obligations hereunder.

WITNESS the following signatures:

| SELLER: | PURCHASER: |
|---|---|
| STONY POINT LAND, INC., a Virginia Corporation | *Katherine P Hubbard* |
| | Name: Katherine P Hubbard |
| By: *Lila H. Putney* | *T R Hubbard* |
| Mark A. Putney *Lila H. Putney* | |
| Its President | Name: Thomas R Hubbard |
| Vice | |

From Website

DEFENDANT'S
EXHIBIT
Proposed #3,4



ON THE JAMES

RIVERWATCH...ON THE JAMES
RICHMOND, VIRGINIA

August 14, 2006

## ASSOCIATION DISCLOSURE PACKET NOTICE

**Note to prospective purchasers:** The lot you are considering purchasing is in a development, which is subject to the provisions of the Virginia Property Owners' Association Act. Living in a community association carries with it certain rights, responsibilities and benefits.

Some of the benefits include the right to use common areas, which may include swimming pools, parks, playgrounds and other recreational facilities. In order to finance the operation of the community, each owner is responsible for and obligated to pay regular assessments, and if necessary, special assessments to ensure that the financial requirements are met. Failure to pay any of these assessments may result in a lien being placed on your property.

The use of common areas, financial obligations of lot owners' and other information concerning the rights, responsibilities and benefits resulting from the purchase of a lot in this common interest community are subject to the provisions of governing documents that typically include a declaration, bylaws, articles of incorporation and rules and regulations. These documents play an important role in association living and should be reviewed carefully prior to your purchase.

Some decisions of your association will be made by the board of directors, while others will be made by a vote of all association members, made up of the other lot owners in your development. You will be bound by all decisions of the association and the board of directors. The documents cited above contain information concerning the selection of members of the board of directors, meetings, voting requirements, and other important information you should become familiar with. REMEMBER: Failure to comply with the governing documents of your association can result in legal action being taken against you.

You may wish to become active in your association, either by running for the board of directors or by serving on a committee. Your involvement is important, as you will be bound by all decisions of the association and the board of directors.

**The name of your association is: <u>Riverwatch Property Owners Association, Inc.</u>**

**Assessments and/or Mandatory Fees you are responsible for:**

> **Assessments: <u>$580.00 Quarterly</u>**

> **Special Assessments: <u>None</u>**

> **Other entity or facility: <u>None</u>**

> **Other fees: <u>$386.66 working capital fee due at the time of the first purchase; $50.00 transfer fee payable by the purchaser at each closing to Community Group</u>**

**Failure to pay any of the above Assessments and/or mandatory Fees may result in the following:**

**<u>Failure to pay any of the above Assessments and/or mandatory Fees may result in the following: Referral of account to an attorney for collections plus any other legal recourse.</u>**

**ALL DOCUMENTS AND INFORMATION CONTAINED IN THIS DISCLOSURE PACKET PLAY AN IMPORTANT ROLE IN LIVING WITHIN A COMMON INTEREST**

COMMUNITY AND SHOULD BE REVIEWED CAREFULLY PRIOR TO YOUR PURCHASE OF THE PROPERTY. A LIST OF THOSE DOCUMENTS IS PRINTED ON THE FOLLOWING PAGE OF THIS NOTICE.

Recipient Name (print): _____

Recipient signature: _____

Date: _____

This form was developed by the Real Estate Board in accordance with § 54.1-2105.1 of the *Code of Virginia* and is to accompany the association disclosure packet required by § 55-512 of the *Code of Virginia*.          VREB 7/1/00

## Attached is a disclosure packet that contains the following:

- the name of your association, and if incorporated, the state of incorporation, name and address of the registered agent;
- a statement of any approved expenditures that shall require an additional assessment during the current year or the immediately succeeding fiscal year;
- a statement of all assessments and other mandatory fees currently imposed by the association;
- a statement whether there is any other entity or facility to which the lot owner may be liable for fees or charges;
- a statement of the status and amount of any reserve or replacement fund and any portion of the fund allocated by the board for a specified project;
- a copy of the association's current budget (or a summary thereof) and a copy of its statement of income and expenses or financial condition for the last fiscal year available;
- a statement of the nature and status of any pending suit or unpaid judgment to which the association is a party which either could or would have a material impact on the association or which relates to the lot being purchased;
- a statement setting forth what insurance coverage is provided for all lot owners by the association, including any fidelity bond maintained by the association, and what additional insurance would normally be secured by each individual lot owner;
- a statement that any improvement or alteration made to the lot, or uses made of the lot or common area assigned thereto by the prior lot owner, are not in violation of any of the instruments referred to in this disclosure notice;
- a statement setting forth any restriction, limitation, or prohibition on the right of a lot owner to place a sign on the owner's lot advertising the lot for sale;
- a statement setting forth any restriction, limitation, or prohibition on the right of a lot owner to display any flag on the owner's lot, including, but not limited to reasonable restrictions as to the size, place and manner of placement or display of such flag and the installation of any flagpole or similar structure necessary to display such flag;
- a copy of the current declaration, the association's articles of incorporation and bylaws, and any rules and regulations or architectural guidelines adopted by the association; and
- certification; if applicable, that the association has filed with the Real Estate Board the annual report required by § 55-516.1 of the Code of Virginia; which certification shall indicate the filing number assigned by the Real Estate Board and the expiration date of such filing.

# RIVERWATCH PROPERTY OWNERS ASSOCIATION, INC.

<u>DISCLOSURE STATEMENT</u>

PURCHASER(S): _____

PURCHASE OF: _____

From: STONY POINT LAND, INC.

The following information contained in this Disclosure Statement is issued pursuant to Section 55-512 of the Code of Virginia (The Property Owners' Association Act) and has been prepared to the best of our knowledge:

1. The name of the Association is Riverwatch Property Owners Association, Inc. (hereinafter called "Association"). The Association is incorporated under the laws of the Commonwealth of Virginia. The name and address of the Registered Agent is Edward B. Kidd, 1001 Haxall Point, Richmond, VA 23219.

2. There are no approved expenditure of funds which shall require an additional assessment during the current or immediately succeeding fiscal year.

3. The 2006 assessment is payable quarterly in the amount of $580.00. In addition, there is a non-refundable working capital contribution in the amount of $386.66 due at each closing from the initial purchaser to the Association. Your closing agent should also collect a prorated portion of your assessment at closing from the closing date through the end of the current quarter. Please have them refer to your settlement statement and reference the line item associated with your homeowner assessment

4. There are no other entities or facilities to which the Lot Owner may be liable for fees or other charges.

5. The following is a list of known planned reserve expenditures other than those in the current operating budget: None.

6. A copy of the Association's current budget is attached. As this is the first year of operation, there is no year end balance sheet and annual statement of income and expenses.

7. There are no known pending lawsuits or judgments against the Association.

8. The Association will maintain commercial general liability and property coverage for the common areas. Please note that the Association does not maintain property coverage for the individual home. It is the responsibility of each owner to obtain insurance covering their home, personal property and personal liability. You are urged to consult your insurance agent.

9. For the purpose of resale, an architectural inspection is usually performed on the exterior of the property only. Because you are purchasing directly from the builder we will assume that they will comply with all architectural guidelines. However, if there are any violations upon completion, the individual lot owner will be responsible for compliance. We encourage you to read the guidelines and ensure that the finished home you purchase, meets these requirements.

10. The following restriction pertains to the right to display a sign on the Lot Owner's lot:

    a) No signs of any kind shall be erected within the Properties, if visible from outside the Lot, without the location and design approval by the ARB.

    b) During the ARB-approved construction period for New House Construction only, one construction sigh, utilizing the sign style and type as approved by the ARB, may be staked along the front property line.

    c) One For Sale sign, utilizing the sign style and type as approved by the ARB, may be staked in the front yard of a house during the time it is being offered for sale. Once a property is placed under contract, such sign shall be removed.

d) Lead-in signs are prohibited except during the time of an open house, at which time one such sign, abiding by the design requirements as specified in Appendix F, may be staked adjacent to the north line of the right-of-way of Cherokee Road opposite its intersection with James Riverwatch Drive.

e) Except as provided for in item 4 of Appendix D of the Riverwatch Architectural Standards, no sign of any kind may be visible from Cherokee Road.

f) Except for the security sign provided for in item 11 of Appendix D of the Riverwatch Architectural Standards, no more than one signpost with one sign attached thereto shall be permitted on any Lot at any time.

g) No sign of any kind may be attached to any tree.

h) No sign on any Lot shall exceed two (2) feet by three (3) feet.

i) No sign may be placed on a mailbox or mailbox post except for the street address number in a style and size prescribed by the ARB.

j) No house numbers, names or any other text are permitted on any building on a Lot.

k) Once occupied, a security sign, not exceeding one (1) square foot may be permitted on any Lot, subject to the color, design and location approval of the ARB

11. The following restriction pertains to the right to display a flag on the Lot Owner's lot:

Article XII, Section 21 of the Declaration: "No free-standing pole or other device for the display of flags may be installed within the Properties and no other pole or device for the display of flags may be installed within the Properties except in accordance with the Standards or as otherwise approved by the Architectural Review Board. Flags of the United States, the Commonwealth of Virginia, any active branch of the armed forces of the United States or any military valor or service award of the United States and other flags which comply with all applicable Rules and Regulations may be displayed from any non free-standing pole or device which has been approved by the Architectural Review Board"

Section 5.4.11 (d) of the Riverwatch Architectural Design Standards: "Flags and Banners: A maximum of one (1) decorative or sovereign flag as provided for in Article XII, Section 21 of the Declaration is permitted to be flown from flag standards of 6' or less in length projecting from the front of a house over a porch, door, or other appropriate location at or below the roof eave line. Requests for additional or alternate locations will be considered by the ARB on a case-by-case basis. Torn and tattered flags shall be promptly removed or replaced. Vertical flag poles are prohibited."

12. Copies of the following documents are attached:
- Articles of Incorporation;
- Bylaws; and
- Declaration
- Architectural Design Standards

13. There are no known pending rules or architectural violations.

14. A copy of the disclosure form developed by the Virginia Real Estate Board has been attached.

15. The Association's annual Certificate has not been filed with the Real Estate Board

Signature of Provider: _____    Title: <u>President</u>

Date: <u>August 16, 2006</u>



DEFENDANT'S
EXHIBIT

Proposed #5

## ASSOCIATION DISCLOSURE PACKET NOTICE

**Note to prospective purchasers:** The lot you are considering purchasing is in a development, which is subject to the provisions of the Virginia Property Owners' Association Act. Living in a community association carries with it certain rights, responsibilities and benefits.

Some of the benefits include the right to use common areas, which may include swimming pools, parks, playgrounds and other recreational facilities. In order to finance the operation of the community, each owner is responsible for and obligated to pay regular assessments, and if necessary, special assessments to ensure that the financial requirements are met. Failure to pay any of these assessments may result in a lien being placed on your property.

The use of common areas, financial obligations of lot owners' and other information concerning the rights, responsibilities and benefits resulting from the purchase of a lot in this common interest community are subject to the provisions of governing documents that typically include a declaration, bylaws, articles of incorporation and rules and regulations. These documents play an important role in association living and should be reviewed carefully prior to your purchase.

Some decisions of your association will be made by the board of directors, while others will be made by a vote of all association members, made up of the other lot owners in your development. You will be bound by all decisions of the association and the board of directors. The documents cited above contain information concerning the selection of members of the board of directors, meetings, voting requirements, and other important information you should become familiar with. REMEMBER: Failure to comply with the governing documents of your association can result in legal action being taken against you.

You may wish to become active in your association, either by running for the board of directors or by serving on a committee. Your involvement is important, as you will be bound by all decisions of the association and the board of directors.

The name of your association is: __Riverwatch Property Owners Association, Inc.__

Assessments and/or Mandatory Fees you are responsible for:

Assessments: __$580.00 Quarterly__

Special Assessments: __None__

Other entity or facility: __None__

Other fees: __$386.66 working capital fee due at the time of the first purchase; $50.00 transfer fee payable by the purchaser at each closing to Community Group__

Failure to pay any of the above Assessments and/or mandatory Fees may result in the following:

__Failure to pay any of the above Assessments and/or mandatory Fees may result in the following: Referral of account to an attorney for collections plus any other legal recourse.__

ALL DOCUMENTS AND INFORMATION CONTAINED IN THIS DISCLOSURE PACKET PLAY AN IMPORTANT ROLE IN LIVING WITHIN A COMMON INTEREST

COMMUNITY AND SHOULD BE REVIEWED CAREFULLY PRIOR TO YOUR PURCHASE OF THE PROPERTY. A LIST OF THOSE DOCUMENTS IS PRINTED ON THE FOLLOWING PAGE OF THIS NOTICE.

Recipient Name (print): _Thomas R. and Katherine P. Hubbard_

Recipient signature: _Kathe e P Hubbard_    _____

Date: _2006- 09-15_

This form was developed by the Real Estate Board in accordance with § 54.1-2105.1 of the *Code of Virginia* and is to accompany the association disclosure packet required by § 55-512 of the *Code of Virginia*.          VREB 7/1/00



DEFENDANT'S EXHIBIT
Proposed #6

## Property Owner's Association Disclosure

Stony Point Land, Inc. (the "Seller") represents that Lot __2__ of Riverwatch (the "Property") is part of Riverwatch Property Owners Association, Inc. (the "Association") as provided by the Virginia Property Owner's Association Act §55-508 through 516, Code of Virginia, 1950 as amended ("the Act").

The Act requires that a Disclosure Packet concerning vital information about the Association and the Seller's Property be prepared for review by the Purchaser. The Seller, in cooperation with the Association has taken affirmative action in automatically providing the disclosure packet to all Purchasers.

I/We, the undersigned purchasers of the above captioned Lot, pursuant to an Agreement of Sale with the Seller, acknowledge that I/We have received on the below captioned date the Disclosure Packet as prescribed by The Act and I/We further acknowledge that the information contained in the Disclosure Packet, including but not limited to the payment of assessments, is a part of the Agreement of Sale and is construed as if this Addendum were fully set out therein.

I/We acknowledge that the Seller has hereby fully discharged its responsibility in providing a Disclosure Packet and that it is under no further obligation to provide any additional disclosure packets to us.

_Katherine P Hubbard_ _____     _2006-09-22_
**Purchaser**           **Witness**        **Date**
_Thomas R. Hubbard_  _____     _2006-09-22_
**Purchaser**           **Witness**        **Date**



DEFENDANT'S
EXHIBIT

Proposed #7

## Property Owner's Association Disclosure

Stony Point Land, Inc. (the "Seller") represents that Lot ___2___ of Riverwatch (the "Property") is part of Riverwatch Property Owners Association, Inc. (the "Association") as provided by the Virginia Property Owner's Association Act §55-508 through 516, Code of Virginia, 1950 as amended ("the Act").

The Act requires that a Disclosure Packet concerning vital information about the Association and the Seller's Property be prepared for review by the Purchaser. The Seller, in cooperation with the Association has taken affirmative action in automatically providing the disclosure packet to all Purchasers.

I/We, the undersigned purchasers of the above captioned Lot, pursuant to an Agreement of Sale with the Seller, acknowledge that I/We have received on the below captioned date the Disclosure Packet as prescribed by The Act and I/We further acknowledge that the information contained in the Disclosure Packet, including but not limited to the payment of assessments, is a part of the Agreement of Sale and is construed as if this Addendum were fully set out therein.

I/We acknowledge that the Seller has hereby fully discharged its responsibility in providing a Disclosure Packet and that it is under no further obligation to provide any additional disclosure packets to us.

| | | |
|---|---|---|
| _____ | P.T. Buchan | 2006-09-28 |
| Purchaser | Witness P T Buchan | Date |
| Kathi_ P Hubbard | | 2006-09-28 |
| Purchaser | Witness | Date |

DEFENDANT'S
EXHIBIT
Proposed #8



**Katherine Hubbard <katherine.hubbard@gmail.com>**

# Acknowledgement of Receipt of Disclosure Package/HOA Docs

**Lynn Pritchard <LynnPritchard@hughes.net>**                  **Fri, Sep 22, 2006 at 3:56 PM**
Reply-To: Lynn@lynnpritchard.com
To: Tammy Glenn <tammy.glenn@century21.com>
Cc: Katherine Hubbard <katherine.hubbard@gmail.com>

Katherine and Tom-
Please ratify the attached document, date as of the date of the contract, and fax back to me and to Tammy.
The entire disclosure package and all HOA are on the website link. We will ultimately get a "pretty" copy in a
three-ring binder to you through Tammy, but you have everything available to you online.

Thanks, and congratulations!

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

📎 **Addendum to Purchase Agreement.pdf**
   21K

## Property Owner's Association Disclosure

Stony Point Land, Inc. (the "Seller") represents that Lot _____ of Riverwatch (the "Property") is part of Riverwatch Property Owners Association, Inc. (the "Association") as provided by the Virginia Property Owner's Association Act §55-508 through 516, Code of Virginia, 1950 as amended ("the Act").

The Act requires that a Disclosure Packet concerning vital information about the Association and the Seller's Property be prepared for review by the Purchaser. The Seller, in cooperation with the Association has taken affirmative action in automatically providing the disclosure packet to all Purchasers.

I/We, the undersigned purchasers of the above captioned Lot, pursuant to an Agreement of Sale with the Seller, acknowledge that I/We have received on the below captioned date the Disclosure Packet as prescribed by The Act and I/We further acknowledge that the information contained in the Disclosure Packet, including but not limited to the payment of assessments, is a part of the Agreement of Sale and is construed as if this Addendum were fully set out therein.

I/We acknowledge that the Seller has hereby fully discharged its responsibility in providing a Disclosure Packet and that it is under no further obligation to provide any additional disclosure packets to us.

| | | |
|---|---|---|
| _____ | _____ | _____ |
| Purchaser | Witness | Date |
| _____ | _____ | _____ |
| Purchaser | Witness | Date |

DEFENDANT'S EXHIBIT

Proposed #9



Katherine Hubbard <katherine.hubbard@gmail.com>

# Riverwatch

**HOMESBYTVG@aol.com <HOMESBYTVG@aol.com>**
To: katherine.hubbard@gmail.com

**Sun, Nov 12, 2006 at 1:24 PM**

Katherine
Thought I would email Lynn's latest news on Riverwatch! Isn't that great about the prices.
I will ask Lynn to send me a copy once she has them finalized.
Katherine, when you have time today or tomorrow, could you email me and let me
know if you have received my package yet? Also, did you get a copy from Lynn on
the Homeowner Docs? Last question, I had emailed you a while ago about who
you all would like to use for your attorney to represent you on the lot when you close.
I need to let Lynn know, as well as send a copy to the attorney you select. Jim and
I use Frank Morton, who is in our building at Signature and just across the street
from your folks. He is very reasonable and would do a good job for you. If this is o.k.
just email and let me know or if you have someone else let me know their name.
Thanks, hope it has stopped raining there. We are getting buckets today!!
Oh by the way, Charles Johnson with Hasker Homes finally called me back on Friday.
I have been trying to get in touch with him for over a month. Charles built in Bellgrade
and he is also building a spec home in Riverwatch. I am going to talk to him Monday
and see if he has some information that he can send me to forward to you.
It will be great if we can find a plan with one of the builders we decide to use because
if we want to draw up our own plans it can cost about 10% of the total house. My
broker just sold a home in Founders Bridge and the customer paid the architect
over $100,000 just to draw up the plans. Note that the plans I sent you from Dumont
and Napier are only just a start, they have many other plans.
As soon as you receive my package, give me a call and we can go over any questions
you will have. I know the mail was not running on Saturday so you may not get my
package till Monday or Tuesday.
Talk to you soon,
Tammy

--------- Forwarded message ---------
From: "Lynn Pritchard" <lynn@lynnpritchard.com>
To: <HOMESBYTVG@aol.com>
Date: Sun, 12 Nov 2006 06:44:27 -0500
Subject: RE: Riverwatch

Thanks for the update on the contract. Will look for it and get it signed and a legible copy on its way to you
as soon as received. [Karen, please be looking for it and have Lila sign it and scan/email and hard mail a copy
to Tammy. Please also alert me to this having been completed].

Per Lila, those docs went out when you last requested them. Can you confirm receipt with Katherine and let
me know?

I spoke with Mark just two days ago about progress. He reports that almost everything has been signed off
on with the city, and there is, per my understanding, only one more outstanding impediment, and that
should be signed off on rather quickly. We're in the process of preparing to raise prices on all remaining lots
(he and I have agreed upon the new prices, though the info is not available yet for public consumption), so
that's a good sign, too! My guess, and it is purely that, is that the 'dozers will be in there before the end of this

month. + 6 months would put us set for a June closing(?). Katherine should be pleased when she sees the new prices, especially on the riverfront lots.

--Lynn

**Lynn Bugg Pritchard**
**Associate Broker, Joyner Fine Properties**
319 Maple Avenue
Richmond, Virginia 23226

(O) 804-864-0301
(F) 804-673-4084

Email: lynn@lynnpritchard.com
Web: www.lynnpritchard.com
*Licensed in the Commonwealth of Virginia*

*Assistant:*
**Karen Snyder**
**Realtor Associate, Joyner Fine Properties**
804-864-0309 (O)
804-539-9339 (C)
Email: Karen.Snyder@JoynerFineProperties.com
*Licensed in the Commonwealth of Virginia*

---

**From:** HOMESBYTVG@aol.com [mailto:HOMESBYTVG@aol.com]
**Sent:** Saturday, November 11, 2006 1:59 PM
**To:** lynn@lynnpritchard.com
**Cc:** katherine.hubbard@gmail.com
**Subject:** Re: Riverwatch

Hi Lynn
I received the original contract back from Katherine and I am going to drop it off at your office on Monday. As soon as you get the seller to sign it could you please send me a clean copy. I still have not been able to process the contract because the fax was unreadable. Thanks! Also, I know you mentioned that you would be sending Katherine a copy of the bylaws. Has that gone out yet? Thanks for all your help!
How is the progress coming on getting started? Do you think it will now be May or June before they are ready to close on lots?
Hope to hear from you soon!
Tammy

---

DEFENDANT'S
EXHIBIT
Proposed #23

**Gmail**
by Google  BETA

Katherine Hubbard <katherine.hubbard@gmail.com>

# Acknowledgement of Receipt of Disclosure Package/HOA Docs

**Tom Hubbard <tom.r.hubbard@gmail.com>**                          **Wed, Aug 27, 2008 at 8:55 AM**
To: lynn@lynnpritchard.com
Cc: Katherine Hubbard <katherine.hubbard@gmail.com>

That would be great, if should could print the docs and include the
signed copy of the sales contract.  She can call my cell to let me
know when it is ready today, and I can drop by at her convenience.
Thanks much!

Tom
804-399-8069 (mobile)

On Wed, Aug 27, 2008 at 9:44 AM, Lynn Pritchard <lynn@lynnpritchard.com> wrote:
> I'll have to get another book from developer, Mark Putney, and he's not in
> town either.  There's no question that I can get you another hard copy of
> the book, but I can't do so until he's back in town, as I don't have them at
> my office.
>
> However, here's the link to the documents:
>
> http://riverwatch.cc/go/hoadocs
>
> At least this should help until I can get you the hard copy.  Would it help
> for Karen to print these documents out for you?  I'm sure that she'd be glad
> to do so.
>
>
> Lynn Bugg Pritchard
> Associate Broker, Joyner Fine Properties
> 319 Maple Avenue
> Richmond, Virginia 23226
>
> (O) 804-864-0301
> (C) 804-241-3053
> (F)  804-673-4084
>
>
>
> Email:  Lynn@LynnPritchard.com
> Web:   www.LynnPritchard.com
> Licensed in the Commonwealth of Virginia
>
> Realtor Associate, Buyer Agent, and Administrative Assistant:
> Karen Snyder Bailey
> Realtor Associate, Joyner Fine Properties
> 804-864-0309 (O)
> 804-539-9339 (C)
> Email:  Karen.Snyder@JoynerFineProperties.com
> Licensed in the Commonwealth of Virginia
>

```
>
>
>
> -----Original Message-----
> From: Tom Hubbard [mailto:tom.r.hubbard@gmail.com]
> Sent: Wednesday, August 27, 2008 9:35 AM
> To: lynn@lynnpritchard.com
> Cc: Katherine Hubbard
> Subject: Re: Acknowledgement of Receipt of Disclosure Package/HOA Docs
>
> Thanks, Lynn.  I wouldn't be surprised if Tammy lost it.  Can I work
> with your assistant to get copies today?  I can drop by the office any
> time.  Thanks.
>
> On Wed, Aug 27, 2008 at 9:30 AM, Lynn Pritchard <lynn@lynnpritchard.com>
> wrote:
>> Good morning, Tom!  I am out of town right now and will be back in the
>> office on Tuesday.  I believe that Stony Point Land gave you a hard copy
> of
>> the disclosure packet when the contract was delivered back to Tammy, but
>> I'll see about getting another one to you.  You can call me directly on my
>> cell in you like: 804-241-3053.  Thanks, Tom, and I hope that all is well
>> with you all!
>>
>>
>> Lynn Bugg Pritchard
>> Associate Broker, Joyner Fine Properties
>> 319 Maple Avenue
>> Richmond, Virginia 23226
>>
>> (O) 804-864-0301
>> (C) 804-241-3053
>> (F)  804-673-4084
>>
>>
>>
>> Email:  Lynn@LynnPritchard.com
>> Web:   www.LynnPritchard.com
>> Licensed in the Commonwealth of Virginia
>>
>> Realtor Associate, Buyer Agent, and Administrative Assistant:
>> Karen Snyder Bailey
>> Realtor Associate, Joyner Fine Properties
>> 804-864-0309 (O)
>> 804-539-9339 (C)
>> Email:  Karen.Snyder@JoynerFineProperties.com
>> Licensed in the Commonwealth of Virginia
>>
>>
>>
>>
>> -----Original Message-----
>> From: Tom Hubbard [mailto:tom.r.hubbard@gmail.com]
>> Sent: Wednesday, August 27, 2008 9:15 AM
>> To: Lynn Pritchard
>> Cc: Katherine Hubbard
>> Subject: Fwd: Acknowledgement of Receipt of Disclosure Package/HOA Docs
>>
>> Hey Lynn, I hope that you are enjoying these last few days of Summer, and
```

>> that you are getting ready for a great Labor Day weekend. It has been a
>> while since we've spoken, and it would be great to catch up some time.
>>
>> Regarding the binder mentioned below, I don't think that we ever received
>> it, or if we did, I cannot seem to find it. Would you mind if I came by
>> sometime today to pick it up (or another copy) along with the sales
>> contract? I'll follow up with a phone call to set a time, etc. Thanks!
>>
>> Tom
>>
>>
>> ---------- Forwarded message ----------
>> From: Katherine Hubbard <katherine.hubbard@gmail.com>
>> Date: Mon, Aug 25, 2008 at 4:18 PM
>> Subject: Fwd: Acknowledgement of Receipt of Disclosure Package/HOA Docs
>> To: Tom Hubbard <tom.r.hubbard@gmail.com>
>>
>>
>> ---------- Forwarded message ----------
>> From: Lynn Pritchard <LynnPritchard@hughes.net>
>> Date: Fri, Sep 22, 2006 at 4:56 PM
>> Subject: Acknowledgement of Receipt of Disclosure Package/HOA Docs
>> To: Tammy Glenn <tammy.glenn@century21.com>
>> Cc: Katherine Hubbard <katherine.hubbard@gmail.com>
>>
>>
>> Katherine and Tom-
>> Please ratify the attached document, date as of the date of the contract,
>> and fax back to me and to Tammy. The entire disclosure package and all
> HOA
>> are on the website link. We will ultimately get a "pretty" copy in a
>> three-ring binder to you through Tammy, but you have everything available
> to
>> you online.
>>
>> Thanks, and congratulations!
>>
>>
>
>


DEFENDANT'S EXHIBIT

Proposed #27

# TROUTMAN SANDERS LLP

### ATTORNEYS AT LAW
#### A LIMITED LIABILITY PARTNERSHIP

TROUTMAN SANDERS BUILDING
1001 HAXALL POINT
RICHMOND, VIRGINIA 23219
www.troutmansanders.com
TELEPHONE: 804-697-1200
FACSIMILE: 804-697-1339

MAILING ADDRESS
P.O. BOX 1122
RICHMOND, VIRGINIA 23218-1122

John K. Burke, Jr.
john.burke@troutmansanders.com

Direct Dial: 804-697-1210
Direct Fax: 804-698-5105

September 16, 2008

**VIA FACSIMILE (804) 648-3914**
**AND REGULAR MAIL**

Stephen C. Conte, Esquire
Blackburn, Conte, Schilling & Click, P.C.
300 West Main Street
Richmond, VA 23220-5630

**Re:    Lot 2 Riverwatch**

Dear Steve:

This firm represents Stony Point Land, Inc. in connection with the dispute with the Hubbards.

In response to your letter dated September 10, 2008 to Mark Putney, the disclosure packet was delivered to Mr. and Mrs. Hubbard on at least three occasions: on September 15, 2006, again on September 28, 2006, and finally on August 27, 2008, when at his request the documents were sent electronically to Mr. Hubbard, and he acknowledged receiving them in an email, and a hard copy of the documents was also provided to the Hubbards on that date. Moreover, your letter dated September 10, 2008 was obviously sent more than three days after the deliveries of the disclosure packet, and for that reason alone is ineffective.

Stony Point Land, Inc. will notify Mr. and Mrs. Hubbard when the Phase One Infrastructure is completed, and will expect them to fulfill their obligation to close on the purchase of Lot 2 within ten days following receipt of such notice, all as provided for in the Real Estate Purchase Agreement. Failure to do so will constitute a breach of the agreement, in which event Stony Point Land, Inc. will pursue all rights at law and in equity to enforce the terms of the agreement.

Sincerely,

John K. Burke, Jr.

1767301

# TROUTMAN SANDERS LLP
### ATTORNEYS AT LAW
A LIMITED LIABILITY PARTNERSHIP

Stephen C. Conte. Esquire
September 16, 2008
Page 2


cc:    Mr. Mark Putney
        Edward B. Kidd, Esquire

*From Website*

DEFENDANT'S
EXHIBIT
Proposed #29



# Riverwatch

## ON THE JAMES

---

RIVERWATCH...*ON THE JAMES*
RICHMOND, VIRGINIA

---

*July 28, 2008*

## RIVERWATCH PROPERTY OWNERS ASSOCIATION, INC.
## ASSOCIATION DISCLOSURE STATEMENT

Stony Point Land, Inc. (the "Seller") represents that Lot _____ of Riverwatch (the "Property") is part of Riverwatch Property Owners Association, Inc. (the "Association") as provided by the Virginia Property Owner's Association Act §55-508 through 516, Code of Virginia, 1950 as amended ("the Act").

The Act requires that a Disclosure Packet concerning vital information about the Association and the Seller's Property be prepared for review by the Purchaser. The Seller, in cooperation with the Association has taken affirmative action in automatically providing the disclosure packet to all Purchasers.

I/We, the undersigned purchasers of the above captioned Lot, pursuant to an Agreement of Sale with the Seller, acknowledge that I/We have received on the below captioned date the Disclosure Packet as prescribed by The Act and I/We further acknowledge that the information contained in the Disclosure Packet, including but not limited to the payment of assessments, is a part of the Agreement of Sale and is construed as if this Addendum were fully set out therein.

I/We acknowledge that the Seller has hereby fully discharged its responsibility in providing a Disclosure Packet and that it is under no further obligation to provide any additional disclosure packets to us.


_____        _____        _____
Purchaser                       Witness                         Date


_____        _____        _____
Purchaser                       Witness                         Date

RIVERWATCH PROPERTY OWNERS ASSOCIATION, INC.
ASSOCIATION DISCLOSURE PACKET NOTICE

**Note to prospective purchasers:** The lot you are considering purchasing is in a development, which is subject to the provisions of the Virginia Property Owners' Association Act. Living in a community association carries with it certain rights, responsibilities and benefits.

Some of the benefits include the right to use common areas, which may include swimming pools, parks, playgrounds and other recreational facilities. In order to finance the operation of the community, each owner is responsible for and obligated to pay regular assessments, and if necessary, special assessments to ensure that the financial requirements are met. Failure to pay any of these assessments may result in a lien being placed on your property.

The use of common areas, financial obligations of lot owners' and other information concerning the rights, responsibilities and benefits resulting from the purchase of a lot in this common interest community are subject to the provisions of governing documents that typically include a declaration, bylaws, articles of incorporation and rules and regulations. These documents play an important role in association living and should be reviewed carefully prior to your purchase.

Some decisions of your association will be made by the board of directors, while others will be made by a vote of all association members, made up of the other lot owners in your development. You will be bound by all decisions of the association and the board of directors. The documents cited above contain information concerning the selection of members of the board of directors, meetings, voting requirements, and other important information you should become familiar with. REMEMBER: Failure to comply with the governing documents of your association can result in legal action being taken against you.

You may wish to become active in your association, either by running for the board of directors or by serving on a committee. Your involvement is important, as you will be bound by all decisions of the association and the board of directors.

The name of your association is: _Riverwatch Property Owners Association, Inc._

Assessments and/or Mandatory Fees you are responsible for:

      Assessments: _$580.00 Quarterly_

      Special Assessments: _None_

      Other entity or facility: _None_

      Other fees: _$386.66 working capital fee due at the time of the first purchase; $50.00 transfer fee payable by the purchaser at each closing to Community Group_

Failure to pay any of the above Assessments and/or mandatory Fees may result in the following: Referral of account to an attorney for collections plus any other legal recourse.

ALL DOCUMENTS AND INFORMATION CONTAINED IN THIS DISCLOSURE PACKET PLAY AN

IMPORTANT ROLE IN LIVING WITHIN A COMMON INTEREST COMMUNITY AND SHOULD BE

RIVERWATCH PROPERTY OWNERS ASSOCIATION, INC.

DISCLOSURE STATEMENT

PURCHASER(S): _____

PURCHASE OF: Lot _____ Riverwatch

From: STONY POINT LAND, INC.

The following information contained in this Disclosure Statement is issued pursuant to Section 55-512 of the Code of Virginia (The Property Owners' Association Act) and has been prepared to the best of our knowledge:

1. The name of the Association is Riverwatch Property Owners Association, Inc. (hereinafter called "Association"). The Association is incorporated under the laws of the Commonwealth of Virginia. The name and address of the Registered Agent is Edward B. Kidd, 1001 Haxall Point, Richmond, VA 23219.

2. There are no approved expenditure of funds which shall require an additional assessment during the current or immediately succeeding fiscal year.

3. The 2008 assessment is payable quarterly in the amount of $580.00. In addition, there is a non-refundable working capital contribution in the amount of $386.66 due at each closing from the initial purchaser to the Association. Your closing agent should also collect a prorated portion of your assessment at closing from the closing date through the end of the current quarter. Please have them refer to your settlement statement and reference the line item associated with your homeowner assessment

4. There are no other entities or facilities to which the Lot Owner may be liable for fees or other charges.

5. The following is a list of known planned reserve expenditures other than those in the current operating budget: None.

6. A copy of the Association's current budget is attached. As this is the first year of operation, there is no year end balance sheet and annual statement of income and expenses.

7. There are no known pending lawsuits or judgments against the Association.

8. The Association will maintain commercial general liability and property coverage for the common areas. Please note that the Association does not maintain property coverage for the individual home. It is the responsibility of each owner to obtain insurance covering their home, personal property and personal liability. You are urged to consult your insurance agent.

9. For the purpose of resale, an architectural inspection is usually performed on the exterior of the property only. If you are purchasing directly from the builder we will assume that they will comply with all architectural guidelines. However, if there are any violations upon completion, the individual lot owner will be responsible for compliance. We encourage you to read the guidelines and ensure that the finished home you purchase, meets these requirements.

10. The following restriction pertains to the right to display a sign on the Lot Owner's lot:

a) No signs of any kind shall be erected within the Properties, if visible from outside the Lot, without the location and design approval by the ARB.

b) During the ARB-approved construction period for New House Construction only, one construction sign, utilizing the sign style and type as approved by the ARB, may be staked along the front property line.

c) One For Sale sign, utilizing the sign style and type as approved by the ARB, may be staked in the front yard of a house during the time it is being offered for sale. Once a property is placed under contract, such sign shall be removed.

d) Lead-in signs are prohibited except during the time of an open house, at which time one such sign, abiding by the design requirements as specified in Appendix F, may be staked adjacent to the north line of the right-of-way of Cherokee Road opposite its intersection with James Riverwatch Drive.

e) Except as provided for in item 4 of Appendix D of the Riverwatch Architectural Standards, no sign of any kind may be visible from Cherokee Road.

f) Except for the security sign provided for in item 11 of Appendix D of the Riverwatch Architectural Standards, no more than one signpost with one sign attached thereto shall be permitted on any Lot at any time.

g) No sign of any kind may be attached to any tree.

h) No sign on any Lot shall exceed two (2) feet by three (3) feet.

i) No sign may be placed on a mailbox or mailbox post except for the street address number in a style and size prescribed by the ARB.

j) No house numbers, names or any other text are permitted on any building on a Lot.

k) Once occupied, a security sign, not exceeding one (1) square foot may be permitted on any Lot, subject to the color, design and location approval of the ARB

11. The following restriction pertains to the right to display a flag on the Lot Owner's lot:

Article XII, Section 21 of the Declaration: "No free-standing pole or other device for the display of flags may be installed within the Properties and no other pole or device for the display of flags may be installed within the Properties except in accordance with the Standards or as otherwise approved by the Architectural Review Board. Flags of the United States, the Commonwealth of Virginia, any active branch of the armed forces of the United States or any military valor or service award of the United States and other flags which comply with all applicable Rules and Regulations may be displayed from any non free-standing pole or device which has been approved by the Architectural Review Board"

Section 5.4.11 (d) of the Riverwatch Architectural Design Standards: "Flags and Banners: A maximum of one (1) decorative or sovereign flag as provided for in Article XII, Section 21 of the Declaration is permitted to be flown from flag standards of 6' or less in length projecting from the front of a house over a porch, door, or other appropriate location at or below the roof eave line. Requests for additional or alternate locations will be considered by the ARB on a case-by-case basis. Torn and tattered flags shall be promptly removed or replaced. Vertical flag poles are prohibited."

12. Copies of the following documents are attached:

- Articles of Incorporation;
- Bylaws; and
- Declaration
- Architectural Design Standards

13. There are no known pending rules or architectural violations.

14. A copy of the disclosure form developed by the Virginia Real Estate Board has been attached.

15. The Association's annual Certificate has not been filed with the Real Estate Board

Signature of Provider: _____

Title: <u>President</u>

Date: <u>July 28, 2008</u>

| | |
|---|---|
| THOMAS R. HUBBARD,<br>and<br>KATHERINE P. HUBBARD,<br><br>        **Plaintiffs,**<br><br>v.<br><br>STONY POINT LAND, INC.,<br><br>        **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Civil Action No. CL09-000008**<br>)<br>)<br>)<br>)<br>) |

## OPINION AND ORDER

This matter came on for hearing on September 1, 2009, upon Plaintiffs', Thomas R. and Katherine P. Hubbard ("Plaintiff"), Second Motion in Limine. Plaintiff's Second Motion in Limine ("Second Mot.") incorporates the Plaintiff's Supplemental Objections to the Defendant's Witnesses and Exhibits ("Plaintiff's Sup."). (Second Mot. ¶¶ 1, 2.) The Plaintiff objects to the introduction of a letter dated September 16, 2008, from John Burke to Stephen Conte stating that the letter contains repeated hearsay evidence. (Plaintiff's Sup. ¶ 10.) The Plaintiff also seeks to prevent the Defendant from introducing the resumes of expert witnesses Mark Kukoski and Richard Niess. Plaintiff argues that these resumes are repetitive and redundant because both men will be available to testify at trial. (Plaintiff's Sup. ¶¶ 13-14.) Further the Plaintiff seeks to exclude photographs of two properties owned by the Plaintiff. (Plaintiff's Sup. ¶¶ 15-16.) Plaintiff asserts that the photographs of properties on Charmian Road in Richmond and in Newcastle, Washington are irrelevant to the issues in the case and will inject the Plaintiff's financial condition into the trial, contrary to a prior ruling of the Court. (Plaintiff's Sup. ¶¶ 15, 16.) The Plaintiff also states that any evidence that Plaintiff received a property owners' association disclosure ("disclosure") prior to May 22, 2008, should be excluded from trial



because the Riverwatch Property Owners Association, Inc. was not in existence until May 22, 2008 and, therefore, could not make or give disclosures or communicate in any manner. *See* (Second Mot. ¶ 2,) (Plaintiff's Sup. ¶¶ 2-9, 11-12.)

The Court sustains the Plaintiff's objection contained in paragraph 10 of the Plaintiff's Supplemental Objections to the Defendant's Witnesses and Exhibits and the Court overrules the objections contained in paragraphs 13 and 14 of the same. The Court has taken the Plaintiff's objections contained in paragraphs 15 and 16 of the Plaintiff's Supplemental Objections to the Defendant's Witnesses and Exhibits under advisement and will render a decision at a later date.

For the following reasons, the Court denies the Plaintiff's motions stated in paragraphs 2 and 3 of the Plaintiff's Second Motion in Limine and overrules the objections contained in paragraphs 2 – 9 and 11 – 12 of the Plaintiff's Supplemental Objections to the Defendant's Witnesses and Exhibits.

I.

Thomas and Katherine Hubbard ("the Hubbards") filed this case on January 5, 2009, seeking a judgment against Stony Point Land, Inc. ("Stony Point") in the amount of $45,000.00 plus interest calculated from September 21, 2006, and reasonable attorney's fees.

On September 21, 2006 the Hubbards signed a Real Estate Purchase Agreement to purchase Lot 2 of the Riverwatch Subdivision in the City of Richmond and paid Stony Point $45,000.00 as a deposit. The Real Estate Purchase Agreement ("Agreement") stated that Stony Point had not yet obtained final approval of the Subdivision Plat by the City of Richmond. The Agreement also specified that settlement was to take place within ten days after completion of the Phase One Infrastructure which was to provide road access and basic utility extension to the lots as defined later in the agreement. As an additional condition precedent to settlement, Stony

Point was obligated to complete the formation of the Riverwatch Homeowners' Association ("Association").

The Hubbards signed a Property Owner's Association Disclosure form on September 22, 2006 and again on September 28, 2006 acknowledging that they had received a disclosure as required by the Virginia Property Owners' Association Act ("the Act"), Va. Code Ann §55-511 (2003). On May 22, 2008 the Association received a Certificate of Incorporation from the Virginia State Corporation Commission. On August 27, 2008, there was an exchange of e-mails between Thomas Hubbard, Lynn Pritchard, and Karen Snyder Bailey[1] in which Thomas Hubbard requested a disclosure. In a later e-mail on August 27, 2008, Thomas Hubbard acknowledged that he had received electronic copies of the disclosure.

On September 10, 2008, the Hubbards, through their counsel, notified Stony Point that they were canceling the Agreement due to Stony Point's failure to deliver a disclosure to them or notify them that a disclosure was not available. Letter from Stephen C. Conte to Mark A. Putney (September 10, 2008) (Attached to Defendant's Objection to Plaintiffs' Demand for a Jury Trial as Exhibit A).

II.

The Hubbards claim that they are entitled to a return of the deposit because they never received a disclosure as required by the Act. The Hubbards assert that because the Association was not incorporated until May 22, 2008 any disclosures that were sent out by the Association prior to the date of incorporation were ineffective. (Second Mot. ¶ 2.) In support of their position, the Hubbards rely on § 55-111(A)(ii) of the Act which states "the Act requires the seller to obtain from the property owners' association an association disclosure packet and provide it to the purchaser. . . ." Va. Code Ann. § 55-511(A)(ii) (2003). In addition, the Hubbards cite Va.

---

[1] Pritchard was an Associate Broker and Bailey was a Realtor with Joyner Fine Properties.

Code § 13.1-621 stating that a corporation begins when it is issued a certificate of incorporation by the State Corporations Commission. Va. Code Ann. § 13.1-621 (2003). The Hubbards assert that *de facto* corporations are not recognized in Virginia and, therefore, any action taken by the Association before its date of incorporation was null and void. *Geographic Network Affiliates-Int'l, Inc. v. Enter. for Empowerment Found. at Norfolk State Univ.*, 68 Va. Cir. 185 (City of Norfolk 2005).

Stony Point responds that, though *de facto* corporations are not recognized in Virginia, actions of *de jure* corporations taken before their official date of incorporation have been upheld in the Commonwealth. *See Investors & Trust v. Sweet Deals Inc.*, Chancery No. 125372, 1993 WL 945975 (Fairfax Co. Feb. 24, 1993); *Geographic Network Affiliates-Int'l, Inc. v. Enter. for Empowerment Found. at Norfolk State Univ.*, 68 Va. Cir. 185 (City of Norfolk 2005). Based on this, Stony Point argues that the disclosures received by the Hubbards on September 22, 2006 and again on September 28, 2006 were ratified by the subsequent incorporation of the Association. Additionally, Stony Point asserts that an electronic copy of the disclosure packet was received by the Hubbards on August 27, 2008, after the Association was incorporated.

Stony Point also contends that the Association's failure to become a registered entity was merely a defect in the disclosures of September 22 and September 28 of 2006. Stony Point argues that the defect was cured by the Hubbards' failure to cancel the contract within three days of their receipt of these disclosures. *See* Va. Code Ann. § 55-511(A)(iii) (2003) ("[T]he purchaser may cancel the contract within three days after receiving the association disclosure packet or being notified that the association disclosure packet was not available . . . ."); *Davis v. D.R. Horton, Inc.*, 63 Va. Cir. 621 (Fairfax Co. 2002) (holding that even if a disclosure packet is deficient the buyer's remedy is to cancel the Sales Agreement within three days of receipt).

At the time of the execution of the Agreement, the Act required a seller of real estate

subject to the Act to obtain from the property owners' association a disclosure packet and

provide it to the purchaser. Va. Code Ann. § 55-511(A)(ii) (2003). Clause (iii) of § 55-511(A)

provides the purchaser with the option of cancelling the contract within three days after receiving

the packet, for whatever reason, or within three days after notification that the packet will not be

available. *E.g.* Va. Code Ann. § 55-511(A)(iii) (2003); *Davis v. D.R. Horton, Inc.*, 63 Va. Cir.

621 (Fairfax Co. 2002). Section 55-511 of the Act further provides that:

> For the purposes of clause (iii), the association disclosure packet shall be
> deemed not to be available if (i) a current annual report has not been filed by
> the association with either the State Corporation Commission . . . , (ii) the
> seller has made a written request to the association that the packet be
> provided and no such packet has been received within 14 days . . . , or (iii)
> written notice has been provided by the association that a packet is not
> available." Va. Code Ann. § 55-511(A) (2003).

The Act obliges the property owners association to, "[M]ake available to an owner . . . within

fourteen days after receipt of a written request therefore . . . , an association disclosure packet."

Va. Code Ann. § 55-512 (2003).

On September 10, 2008, the date that the Hubbards notified Stony Point of their intention

to cancel the Agreement, the Association had a current annual report on file with the State

Corporation Commission pursuant to Va. Code § 55-511(A) and Va. Code § 13.1-936. The

Hubbards stated reason for canceling the contract on September 10, 2008, was that a disclosure

had not been delivered and that they had not been notified that a disclosure was not available.

Because the Association was incorporated at the time the Hubbards attempted to cancel the

contract, the Court finds that the association disclosure packet was available. *C.f.* Va. Code Ann.

§ 55-511(A) (2003). If the Hubbards had not received a disclosure, their remedy was to request

one in writing from the Association. The only request for a disclosure in evidence was made by

Thomas Hubbard by e-mail on August 27, 2008. E-mail from Tom Hubbard to Lynn Pritchard, Associate Broker, Joyner Fine Properties (Aug. 27, 2008, 9:15:00 EST) (Attached to Defendants Brief in Opposition to Plaintiff's Second Motion in Limine as Exhibit D). In response, Mr. Hubbard was sent electronic copies of the contract, the signed disclosure receipts, and the disclosure, and he acknowledged their receipt in a return e-mail on that same date. E-mail from Tom Hubbard to Karen Snyder Bailey, Realtor, Joyner Fine Propreties (Aug. 27, 2008, 10:17:00 EST) (Attached to Defendants Brief in Opposition to Plaintiff's Second Motion in Limine as Exhibit D) ("I suppose now that I have electronic versions of [the disclosure], there is no need for you to print them for me . . . .").

The Court finds that Mr. Hubbard's acknowledgement that he received an electronic copy of the disclosure to be sufficient delivery. Had the disclosure not been received after fourteen days it would have been statutorily unavailable, and the Hubbards would then have had three days to cancel the contract. Had the Hubbards made a written request prior to May 22, 2008, the disclosure packet would have been statutorily unavailable, and they would have been able to cancel the contract within the three day period. *See Davis v. D.R. Horton, Inc.*, 63 Va. Cir. 621 (Fairfax Co. 2002).

In addition, the Court finds that although formal incorporation of the Association was not completed until May 22, 2008, it is clear from the Agreement and the Property Owner's Association Disclosure forms that the parties anticipated the formation and incorporation of the Association. Indeed, the Agreement made the formation of the Association a condition precedent to settlement. The fact that all parties here clearly anticipated that the Association would be incorporated is sufficient to validate the September 2006 disclosures. *See Investors & Trust v. Sweet Deals Inc.*, Chancery No. 125372, 1993 WL 945975 (Fairfax Co. Feb. 24, 1993).

## III.

In sum, the Court denies the Plaintiff's motions stated in paragraphs 2 and 3 of the Plaintiff's Second Motion in Limine and overrules the objections contained in paragraphs 2 – 9 and 11 – 12 of the Plaintiff's Supplemental Objections to the Defendant's Witnesses and Exhibits. In addition, the Court sustains the Plaintiff's objection contained in paragraph 10 of the Plaintiff's Supplemental Objections to the Defendant's Witnesses and Exhibits and overrules the objections contained in paragraphs 13 and 14 of the same. Plaintiff's objections contained in paragraphs 15 and 16 of the Plaintiff's Supplemental Objections to the Defendant's Witnesses and Exhibits have been taken under advisement and a decision will be rendered by the Court at a later date.

The Clerk is directed to forward a certified copy of this Order to the parties.

**IT IS SO ORDERED.**[2]

ENTER: 9, 29, 09

_____
Richard D. Taylor, Jr., Judge

A Copy,
Teste: BEVILL M. DEAN, CLERK

BY: _____ D.C.

---

[2] In its discretion, the Court dispenses with any requirement that this Opinion and Order be endorsed by counsel of record. See Va. Ct. Rule 1:13.

VIRGINIA:

## IN THE CIRCUIT COURT OF THE CITY OF RICHMOND
### John Marshall Courts Building

THOMAS R. HUBBARD )
)
and )
)
KATHERINE P. HUBBARD, )
)
Plaintiffs, )
)
v. )  Civil Action No. CL09-000008
)
STONY POINT LAND, INC., )
)
Defendant. )

## DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN LIMINE REGARDING COUNT II OF THE COMPLAINT

Defendant Stony Point Land, Inc. hereby moves the Court to grant it partial summary judgment regarding Count II of the Complaint and to exclude related argument and evidence:

1.      In Count II of the Complaint, Plaintiffs seek to avoid their obligations under a real estate contract with defendant on the ground that defendant failed to make "reasonable delivery" of the subject real estate. However, closing on the sale of the property could have occurred long before December 6, 2008 and was not contingent on defendant's completion of the Phase One Infrastructure.

2.      Moreover, Virginia law implies a reasonable time for performance only where the contract does not specify a time for performance and fails to address the possibility of delays. The operative contract in this case does address such issues, so no "reasonable time" limit is imposed for delivery of the lot.



EXHIBIT

G

3. Accordingly, for the reasons stated above and in the contemporaneously-filed Memorandum in Support of this Motion, the Court should grant Stony Point summary judgment on Count II of Plaintiffs' Complaint and should exclude the presentation of argument and/or evidence to the jury regarding Plaintiffs' theory that they may escape the contract because Stony Point did not make "reasonable delivery" of Lot 2.

WHEREFORE, Defendant requests that the Court enter an order granting Defendant's Motion for Partial Summary Judgment and in Limine regarding Count II of the Complaint.

STONY POINT LAND, INC.

By _____
Of Counsel

John K. Burke, Jr. (VSB #16798)
Joshua D. Heslinga (VSB #73036)
TROUTMAN SANDERS LLP
P. O. Box 1122
Richmond, VA 23218
Telephone: (804) 697-1210
Facsimile: (804) 698-5105
*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing pleading has been sent by mail and facsimile on this 25 day of September, 2009 to:

Stephen C. Conte, Esquire
Blackburn, Conte, Schilling & Click, P.C.
300 West Main Street
Richmond, Virginia 23220-5630
fax: _____

**VIRGINIA:**

## IN THE CIRCUIT COURT OF THE CITY OF RICHMOND
### John Marshall Courts Building

**THOMAS R. HUBBARD**

**and**

**KATHERINE P. HUBBARD**                                          **PLAINTIFFS,**

**v.**                                                    **Civil Action Number: CL09-8**

**STONY POINT LAND, INC.,**
**a Virginia corporation,**                                            **DEFENDANT.**

## ORDER DENYING DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT
## AND IN LIMINE REGARDING COUNT II OF THE COMPLAINT

This cause came on the 8th day of October, 2009 to be heard upon the defendant's Motion for Partial Summary Judgment and in Limine Regarding Count II of the Complaint. The parties appeared by counsel, and said Motion was argued by counsel for the respective parties.

UPON CONSIDERATION WHEREOF, the Court hereby denies the defendant's Motion for Partial Summary Judgment and in Limine Regarding Count II of the Complaint.

ENTER: 10/8/09

_____
JUDGE

_____ , p.q.
Stephen C. Conte
BLACKBURN, CONTE, SCHILLING & CLICK, P.C.
300 West Main Street
Richmond, VA 23220-5630
(804) 782-1111
Fax: (804) 648-3914
VSB: 16709
Email: sconte@bcscpc.com

A Copy,
Teste: BEVILL M. DEAN, CLERK
BY: _____ D.C.



EXHIBIT
H

Seen and Objected to: *for the reasons stated in defendant's motion and memorandum in support thereof and at the hearing on Oct. 8*

_____, p.d.

John K. Burke, Jr. (VSB#16798)
TROUTMAN SANDERS LLP
P.O. Box 1122
Richmond, VA 23218.
Telephone: (804) 697-1210
Facsimile: (804) 698-5105